WILLIAM D. MOUNT and MARGARET E. MOUNT, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Mount v. Commissioner
Docket Nos. 42533-85; 2314-86; 12989-86
United States Tax Court
T.C. Memo 1989-405; 1989 Tax Ct. Memo LEXIS 403; 57 T.C.M. (CCH) 1188; T.C.M. (RIA) 89405; August 7, 1989
Thomas B. Butchart and David Slaughter, for the petitioners. Arlene A. Blume, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' income tax as follows: Petitioners
Tax Year
Amount
Wells
1982
$  9,580.00
1983
8,225.00
Mount
1982
10,162.00
1983
9,223.00
The sole issue for decision is whether William D. Mount and Jesse L. Wells are "qualified individuals" eligible to exclude foreign earned income from their respective gross incomes under section 911(a). [2] *405 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time of filing their respective petitions, William and Margaret Mount resided in Marion, Louisiana, and Jesse and Mary Wells resided in Avondale, Louisiana. Petitioners [3] were employed by Penrod Drilling Company (Penrod) as electricians on offshore oil rigs located in the territorial waters of the United Arab Emirates near Abu Dhabi. Each received a 25-percent bonus as a result of his employment overseas. Each has claimed a foreign earned income exclusion for that portion of income earned while employed outside the United States. Petitioners' work schedules during 1982 and 1983 generally consisted of a rotational work and rest period of 28 days each. In *406 early 1983, Mount converted to a rotational work and rest period of 56 days each; Wells made such a conversion in mid-1983. During work periods, Penrod provided petitioners with food and living quarters at its expense. Although another individual would reside in petitioners' living quarters during petitioners' rest periods, petitioners kept books, clothing and other personal possessions on the oil rig during both work and rest periods. At the end of each 28 or 56 day work period, petitioners returned to Louisiana where their families resided. Wells, on infrequent occasions, would spend a few days during his rest period in the United Arab Emirates before returning to Louisiana; however, he never remained in the United Arab Emirates for an entire rest period. Travel to and from Abu Dhabi was undertaken during petitioners' rest period. Penrod would make the transportation arrangements, and pay for the travel costs between Abu Dhabi and Louisiana. Prior to September 8, 1982, the oil rigs, upon which petitioners worked, were located offshore of Abu Dhabi. After September 8, 1982, these oil rigs were located onshore at the dock in Abu Dhabi, and thereafter petitioners were able *407 to interact with several of the townspeople of Abu Dhabi. They occasionally went fishing or frequented a local lounge with their friends from Abu Dhabi. Wells' interaction with the community while in Abu Dhabi was more extensive than that of Mount. Wells had a "significant other" while in Abu Dhabi, learned to speak some Arabic, and studied the Koran. He would also, on occasion, visit the homes of local friends. He shopped for food at a local grocery store and had a charge account with a jewelry store in the United Arab Emirates. Petitioners were permitted to work in the United Arab Emirates under resident visas issued to them. They paid no income taxes to the United Arab Emirates. Petitioners maintained houses in Louisiana to which they returned at the end of each work period. Each was registered to vote in Louisiana, and each maintained a Louisiana driver's license as well as a bank account in Louisiana. Neither opened a bank account in the United Arab Emirates nor obtained a driver's license there. Petitioners received the following wages from Penrod and claimed entitlement to the following exclusions for foreign earned income: Amount of
Amount of
Petitioner
Year
Earnings
Exclusion
Mount
1982
$ 42,496.83
$ 35,250.00
1983
38,857.60
38,857.60
Wells
1982
43,617.45
37,500.00
1983
42,533.75
41,763.75
*408 Respondent disallowed the claimed foreign earned income exclusion on the basis that neither Wells nor Mount was a qualified individual within the meaning of section 911(d)(1). OPINION Section 911(a) permits certain qualified individuals to exclude foreign income from their gross income. The only issue for decision is whether either Wells or Mount is a "qualified individual" within the meaning of section 911(a). Section 911(d)(1) defines a qualified individual as: an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Wells and Mount must each prove that his respective tax home was outside the United States and each must meet the requirements of section 911(d)(1)(A) (the so-called "bona fide residence test") or the requirements of section 911(d)(1)(B) *409 (the so-called "physical presence test") to be entitled to the foreign earned income exclusion. Petitioners have conceded they cannot meet the physical presence test. Therefore, we need only address whether petitioners' tax homes were outside the United States and whether petitioners have met the bona fide residence test. Under section 911(d)(3), the term "tax home" has the same meaning as a taxpayer's home for section 162(a)(2) purposes (relating to traveling expenses while away from home). However, if a taxpayer's abode is within the United States, the taxpayer is treated as not having a tax home in a foreign country. Section 911(d)(3). Tax home is further defined in section 1.911-2(b), Income Tax Regs., as follows: (b) Tax home * * * an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business, or if the individual has no regular or principal place of business, then at his regular place of abode in a real and substantial sense. An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. Temporary presence *410 of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean the individual's abode is in the United States. Neither Wells nor Mount meets the tax home requirement of section 911(d)(1) because during the years in issue their respective abodes were within the United States. In recent cases [4] addressing the meaning of abode we stated: "Abode" has been variously defined as one's home, habitation, residence, domicile or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Footnote ref. omitted. Bujol v. Commissioner, T.C. Memo. 1987-230, 53 T.C.M. 763, 56 P-H Memo T.C. par. 87,230 at 87-1112.] *411 In this case, the facts indicate that petitioners maintained significant economic, familial and personal ties to the United States. Each (1) maintained a home in Louisiana; (2) had a United States driver's license; (3) maintained bank accounts at United States banks; and (4) was registered to vote in Louisiana. While petitioners to an extent integrated themselves within the United Arab Emirates, no persuasive evidence was presented indicating that their home, habitation, residence, domicile or place of dwelling was in a foreign country. No evidence was offered which indicated that petitioners remained overseas during their entire rest periods, or that Penrod would have allowed them to stay in the employees' quarters. Further, no evidence was presented which indicates petitioners actively sought or obtained housing in the United Arab Emirates for occupancy during rest periods. Accordingly, Wells and Mount each failed to meet his burden of proving he had a "tax home" in a foreign country. Petitioners contend that respondent should be estopped from herein asserting a position which they purport is contrary to guidance provided by respondent in Publication 54 -- Tax Guide for U. *412 S. Citizens and Aliens Abroad. Even if petitioners are correct that respondent is asserting a position contrary to its published guidelines, an issue which we need not decide, a government pamphlet does not act as an estoppel against respondent nor can it change the meaning of a tax statute. Carpenter v. United States, 495 F.2d 175, 184 (5th Cir. 1974). In view of our conclusion that petitioners did not have a "tax home" in a foreign country, we need not consider whether petitioners were bona fide residents of a foreign country. We have considered petitioners' other arguments and find them to be without merit. To reflect the foregoing, Decisions will be entered for the respondent. Footnotes
1. Docket Nos. 2314-86 and 12989-86, both involving Jesse L. Wells and Mary L. Wells, are consolidated herewith.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
3. Each husband-petitioner shall be referred to by his surname and jointly as petitioners since each wife-petitioner is a party to these proceedings solely by virtue of having filed a joint return with her husband.↩
4. Bujol v. Commissioner, T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988). See also Lemay v. Commissioner, 837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256↩.