LONNIE L. HARPER and MILDRED D. HARPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harper v. Commissioner
Docket No. 11239-88
United States Tax Court
T.C. Memo 1990-94; 1990 Tax Ct. Memo LEXIS 94; 58 T.C.M. (CCH) 1509; T.C.M. (RIA) 90094; February 27, 1990
Lonnie L. Harper and Mildred D. Harper, pro se. Arlene A. Blume, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined the following deficiencies in income tax against petitioners: Year
Amount
1984
$  9,582
1985
10,896
Petitioners, husband and wife, filed joint income tax returns for these years. At issue is whether petitioner-husband is a "qualified individual," eligible to exclude foreign earned income from his gross income pursuant to section 911(a) of the Internal Revenue Code. Other adjustments made by the Commissioner (sales tax and medical deductions) flow automatically from the foreign earned income adjustment. The facts have been stipulated. Petitioners resided in Tioga, Louisiana, when they filed their petition herein. In their 1984 and 1985 joint returns they reported wages earned by the husband (sometimes hereinafter referred to as petitioner) and claimed foreign earned income exclusions, *96 as follows: Year
Wages Reported
Exclusion Claimed
1984
$ 48,982.15
$ 43,720.00
1985
47,377.00
47,200.00
Throughout 1984 and 1985, the husband was employed by Diamond M Southern Company as an electrician on an offshore oil rig located in the Strait of Magellan in the territorial waters of Chile near Puerto Arenos, Chile. He has been employed by that company on oil rig sites since 1981, when he began working on a rig off the coast of the United States in the Gulf of Mexico. Since February 1982 he has been assigned to work on the rig off the coast of Chile. He received a 25 percent bonus for his overseas work and an additional 8-1/3 percent hardship allowance. He in fact received the wages each year from the company reported on the 1984 and 1985 returns. Petitioner's work schedule on the rig since 1982 has consisted of alternating extended periods on and off duty. During 1984 and 1985 such alternating periods were 28 days each. Near the end of each off-period, petitioner would travel from his residence in Louisiana via Dallas or Miami to Puerto Arenos, Chile, and, after an overnight stay, he proceeded to the offshore drilling rig for a continuous *97 work period of 28 days. At the conclusion of each work period, petitioner would usually, after an overnight stopover in Puerto Arenos, return to his residence in Louisiana for an equivalent rest period. The travel to and from the drilling rig was undertaken during the rest period. The company paid the transportation costs and made the transportation arrangements. Petitioner was provided with living quarters and meals on the rig throughout his term of duty under his employer's contractual arrangements with the local operator of the rig. When he was on the rig, petitioner shared a room with two other Americans during his work rotation; another trio of workers used the same quarters while petitioner and his roommates were away from the rig on their off rotations. Petitioner had a permanent personal locker on the rig in which he would store his shaving gear, work clothes, books, and other personal belongings during the periods when he was not on the rig. Meals on the rig were provided by the local Chilean operator in a common galley. Petitioner usually spent the entire work period on board the rig, where he worked with five other Americans and 30 to 35 Chilean employees. While on *98 the rig, petitioner was on call 24 hours each day, seven days each week, during the entire 28-day working period, and usually worked in excess of 12 hours each day. During his work rotation, petitioner was allowed to leave the rig only in emergencies, such as if he required emergency medical care not available on the rig. Petitioner is a United States citizen, and has a United States passport. He was permitted to work in Chile under a resident visa. Chile does not impose income taxes on wages, and petitioner paid no taxes to Chile in respect of his employment on the rig. Petitioner could have moved his family to Chile and lived with them there during the periods when he was not working on the rig, but he deferred to his wife's wish to stay in the United States, where she felt safer and more comfortable with the language. Petitioner himself has become fluent in Spanish while working on the rig, and frequently translates between English and Spanish for visitors to the rig. Although petitioner himself did not maintain a house or apartment in Chile during the tax years, he occasionally stayed with friends in Puerto Arenos overnight while in transit to and from the rig. He has *99 friends in Chile whom he visits on occasion while in transit to the United States, including several American friends who have established residences in Chile. At least one of his friends in Chile has offered him the use of a house for himself and his family on visits to Chile. Since January 1988, petitioner has paid 30,000 Chilean pesos a month for the use of a bedroom and bath, where he stores his fishing gear and which he uses on his overnight stays in Puerto Arenos on his way to and from the rig. The record does not show the relationship between the Chilean peso and the American dollar at any relevant time. In January 1987, petitioner obtained a fishing license in Chile and stayed there an additional week during his off-period for a trout fishing trip. Throughout 1984 and 1985, petitioner's wife and teenaged daughter lived in a house "in near" Alexandria, Louisiana, which petitioners have owned, subject to a mortgage, since 1970. Mrs. Harper was occasionally employed in Pineville, Louisiana, during the taxable years, but usually stayed at home to be with her children and to travel with her husband in the United States when he was not working. During his nonworking rotations, *100 petitioner worked in the garden of his house in Louisiana, visited with his three children, went on vacation and fishing trips with his wife and children in Louisiana, Arkansas, Georgia, and the Gulf of Mexico, and did woodworking. Petitioners maintained two vehicles which were kept and registered in Louisiana during 1984 and 1985; Mrs. Harper had a 1981 Buick and Mr. Harper had a 1976 Chevy Luv pickup truck. He maintained a Louisiana driver's license and was registered to vote in Louisiana. He was authorized to drive in Chile during 1984 and 1985 under an international driver's license which he obtained in the United States. However, he does not keep a car of his own in Chile, although he has permission to use several friends' cars. Using their Tioga, Louisiana, address, petitioners maintained joint bank accounts in Louisiana, and had joint credit cards issued by banks in the United States which petitioner used to make purchases in the United States and in Chile. His biweekly payroll check was mailed to his address in Tioga, Louisiana. The company withheld from his wages premiums for hospitalization insurance for petitioner and his family in the United States as well as *101 FICA taxes related to his United States Social Security benefits. In 1987, petitioner established a checking account with the Banco O'Higgins in Puerto Arenos, Chile, which accepted guarantees concerning his credit worthiness from petitioner's bank in the United States. Petitioner occasionally deposits funds from his bank account in the United States into the Chilean account and uses checks drawn on the Chilean bank account to make purchases in Chile for himself and friends. He uses a friend's house in Chile as the address of record for the Chilean checking account. During 1984 and 1985, petitioner spent 200 days and 215 days, respectively, outside the United States. Petitioner was not present in any foreign country or countries for 330 days out of any 12-month period encompassing any portion of the 1984 or 1985 tax years. The exclusion from gross income of petitioner's Chilean earnings pursuant to section 911(a) of the Code [1] depends upon whether he was a "qualified individual." That term is defined in section 911(d)(1) as follows: SEC. 911(d)(1) QUALIFIED INDIVIDUAL. -- The term *102 "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. [Emphasis supplied.] There is no question that petitioner cannot qualify under subparagraph (B) in view of the stipulation of the parties that "Petitioner was *103 not present in any foreign country or countries for 330 days out of any twelve month period encompassing any portion of the 1984 or 1985 tax years." Petitioners do not argue to the contrary. At issue is whether the husband is otherwise covered by section 911(d)(1) as a "qualified individual." We are satisfied not only, (1) that he cannot qualify under subparagraph (A) as having been a "bona fide resident of [Chile] * * * for an uninterrupted period which includes" either 1984 or 1985, but also, (2) that he in any event does not come within 911(d)(1)(A) or (B) because of his failure to show that his "tax home" was in a foreign country. We consider each of these points. 1. Bona fide resident. The term bona fide resident is "[at] best * * * an elusive expression * * * peculiarly related to the facts in any given case." See Sochurek v. Commissioner, 300 F. 2d 34, 37 (7th Cir. 1962). Although the Seventh Circuit reversed 36 T.C. 131 (1961) in that case, it nevertheless accepted the statement in Nelson v. Commissioner, 30 T.C. 1151, 1153 (1958) "that each new case must be decided on the basis of its own unique attendant circumstances. *104 " 300 F. 2d at 37-38. We also note initially that subparagraph (A) requires not merely that the taxpayer be a bona fide resident of a foreign country. It requires further that his status as such be "estblished to the satisfaction of the Secretary." These are not idle words, and should not be lightly ignored. That statutory language was construed in Schoneberger v. Commissioner, 74 T.C. 1016, 1024 (1980), to require "the additional deference to the Commissioner's determination which is implicit in the 'strong proof' standard." Our review of the facts in this record convinces us that petitioner was not a bona fide resident of Chile during the tax years. Petitioners have not only failed to present the required "strong proof," but they have not even come close to presenting a preponderance of evidence in support of their position. To the contrary, the evidence plainly shows that petitioner was not a bona fide resident of Chile in 1984 or 1985. He was indeed what has recently been aptly characterized as a "global commuter." Woodward v. Commissioner, T.C. Memo. 1990-7. Petitioners real residence was in Louisiana. He was present in *105 Chile under comparatively rigorous conditions for only the alternate rotational periods of 28 days each. His basic ties remained in the United States. He was a United States citizen with a United States passport, and was permitted to work in Chile only under "resident visa." He paid no taxes to Chile. He and his wife owned their own home in Louisiana, and he deliberately did not move his family to Chile. His principal bank account was in the United states, and his credit cards were issued by banks in the United States. He maintained two automobiles in Louisiana, where they were registered. He had a Louisiana driver's license. His leisure time was spent primarily in the United States. Petitioners have attempted to marshal various items of evidence to support their contention that Mr. Harper's bona fide residence was in Chile, but that evidence shows no more than that he had some comparatively minor ties to that country, the most significant of which related irrelevantly to subsequent tax years. During his 28-day periods on the rig he was virtually isolated from everyday life in Chile, and the intervening 28-day periods off the rig were spent in the United States, except for *106 some relatively minor contacts in Chile while en route to or from the United States. In our judgment, the weight of the evidence is overwhelmingly against petitioners. We so hold. Cf. Woodward v. Commissioner, supra;Ritchie v. Commissioner, T.C. Memo. 1989-426; Hoppes v. Commissioner, T.C. Memo. 1989-228. He was not a "bona fide resident" of Chile during either 1984 or 1985. 2. Tax home. Moreover, there is an even more fundamental reason why petitioner was not a "qualified individual" under section 911(d)(1)(A) or (B). He must satisfy the threshold requirement that his "tax home" was in Chile. The term "tax home" is defined in section 911(d)(3) as follows: (3) TAX HOME. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. [Emphasis supplied.] The second sentence *107 is fatal to the position that petitioner had a "tax home" in Chile, since his "abode" was within the United States. The meaning of the word "abode" has been considered in a number of cases involving persons working mostly on rigs in the territorial waters of various foreign countries on rotating periods, usually of 28 days each. The same kind of criteria examined in connection with our consideration of the "bona fide resident" issue were taken into account in determining whether the taxpayer had an "abode" within the United States. Although there may be some peripheral differences in detail between this case and the other cases -- and indeed between any two of the other cases themselves -- the dominant thrust of that line of cases is clear. We follow them here and hold that petitioner's "abode" during 1984 and 1985 was in the United States. Lemay v. Commissioner, 837 F. 2d 681, 683 (5th Cir. 1988), affg. a Memorandum Opinion of this Court; Bujol v. Commissioner, T.C. Memo. 1987-230, affd. without published opinion 842 F. 2d 328 (5th Cir. 1988); Harrington v. Commissioner, 93 T.C. 297, 307-310 (1989); Doyle v. Commissioner, T.C. Memo. 1989-463; *108 Mount v. Commissioner, T.C. Memo. 1989-405; Eubanks v. Commissioner, T.C. Memo. 1989-233; Moudy v. Commissioner, T.C. Memo. 1989-216; Adams v. Commissioner, T.C. Memo. 1989-91; Bosarge v. Commissioner, T.C. Memo. 1989-15; Miller v. Commissioner, T.C. Memo. 1988-397; Whitesell v. Commissioner, T.C. Memo. 1988-398; Steel v. Commissioner, T.C. Memo. 1988-399; Lovelady v. Commissioner, T.C. Memo. 1988-533. Cf. Benham v. Commissioner, T.C. Memo. 1989-215. Decision will be entered for the respondent. Footnotes
1. SEC. 911(a). EXCLUSION FROM GROSS INCOME. -- At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year -- (1) the foreign earned income of such individual, and (2) the housing cost amount of such individual. [Emphasis supplied.]↩