Howard J. SOCHUREK, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13450.

United States Court of Appeals Seventh Circuit.

March 1, 1962.

...

Irving Lowe, Milwaukee, Wis., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Robert L. Waters, Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Petitioner, Howard Sochurek (taxpayer), seeks review of a decision of the Tax Court entered June 8, 1961. By its decision, the Tax Court affirmed the Commissioner's determination that taxpayer was not a bona fide resident of a foreign country or countries for a period including all of 1954 within the meaning of section 911(a) (1) of the Internal Revenue Code of 1954, Title 26 U.S.C.A.,[1] and therefore is not entitled to exclude from gross income the compensation received by him during 1954 from Life and Time, Inc.

The following statement is based upon the findings of fact made by the Tax Court.

Taxpayer was born in Milwaukee, Wisconsin and is a citizen of the United States. His federal income tax return for 1954 was filed by his father, acting under a power of attorney.

Beginning in 1948, taxpayer became associated with Life Magazine. In 1950, he accepted a staff position as a foreign correspondent in the Southeast Asia area with Life's foreign news service composed of a professional group of foreign correspondents who spend their working time in foreign countries. He returned to this country in December, 1951 and remained here until April, 1952. At that

1. "§ 911(a) General rule.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

"(1) Bona fide resident of foreign country.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States * * *."

time he was again assigned to the Far East and selected Singapore as his base. In September, 1952, while on an assignment in India, he contracted malaria and returned to this country. He then received an assignment to the Chicago bureau of Life where he remained until June, 1953. In July, 1953, he resumed his activities as a foreign correspondent and did stories in France, Austria, Canada and Newfoundland.

In October, 1953, taxpayer was given an area assignment in the Far East extending from Korea to Indonesia. He made his own decision as to his headquarters and chose Singapore. He proceeded to Singapore during the early days of November, 1953.

With respect to living accommodations acquired by taxpayer, the Tax Court found as follows:

"In Singapore, Howard rented living quarters at 25 Brizay Park, a suburb of Singapore, from Dwight Martin, a fellow correspondent who worked for Time Magazine. Martin contracted for the house, a large one containing four bedrooms and servants' quarters. Martin supplied most of the furniture. Howard's furniture was in storage in America at that time. Because of film and camera storage problems, Howard installed and personally paid $400 for two air conditioning units. He also bought some dishes, end tables and other minor household items. All of Howard's photographic equipment, which could not be carried with him on trips, was installed in said quarters. *Howard paid Martin $1,000 a year as his share of the rent.* Howard also paid for his own food and living expenses at Brizay Park. Petitioner and Martin employed two houseboys and a laundry woman as servants. Petitioner personally paid for their services while he was in Singapore. Sometimes transient correspondents also lived at the house. Martin traveled on story assignments but not as much as petitioner. On occasion, from November

1953 to December 1955, petitioner stayed in the house. During 1954, he spent about 25 days in Singapore." (Emphasis added.)

Sometimes taxpayer also rented a room at the Raffles Hotel in downtown Singapore. This room was used for his work, to receive people and served as a communications center, the telephone system at the Brizay Park house being inadequate. The Raffles Hotel expenses were paid by Life. Taxpayer's living expenses while in Singapore were paid by him. His living expenses while away from Singapore were paid by his employer.

While in Singapore taxpayer joined the Singapore Swimming Club and the Foreign Correspondent's Club. He became a member of the local Catholic Church and contributed to it. In Singapore, he made various business and social contacts. He established relations with the local branch of the First National City Bank of New York and was friendly with the branch manager. He made social contacts with various members of the Chinese and British communities. During his stay in Singapore, he purchased tailor made clothes from a Singapore tailor. He paid the local consumer, house and compensation taxes. He paid no income tax to the Crown Colony of Singapore during 1954, and the record is silent as to what, if any, personal income taxes were payable by residents.

As might be expected, taxpayer's occupation required him to travel extensively within his area of operations during the period in question. A war was in progress in Indo-China. He wrote an essay on Far Eastern religion. He wrote stories about the U. S. 7th Fleet patrolling the Formosa Straits and a Hong Kong story about American missionaries being evicted from Communist China. He was the only Life reporter in Southeast Asia, and newsworthy events requiring his attention were occurring from Formosa to Indonesia.

Taxpayer's stories were undertaken either on his own initiative or occasionally upon direction from the New York office. He was allowed wide latitude

with respect to stories and the method of his work. When he learned of a possible story he would leave Singapore to pursue the subject at its source, return to Singapore to research and write the article and then, after a rest, depart on another story venture.

On May 1, 1954, taxpayer returned to the United States for a short visit with his mother who had been hospitalized. He also spent the 1954 Christmas holiday in the United States with his parents. The Government raises no question concerning these visits.

In 1954, Life Magazine and Time, Inc. paid taxpayer $16,033.30 for his services and did not deduct any withholding tax. In his 1954 federal income tax return, taxpayer claimed that these wages were exempt from taxation.

The sole question presented on this appeal is whether taxpayer was a bona fide resident of Singapore for an uninterrupted period which includes all of the taxable year 1954. The contested issue is whether the Tax Court erred *as a matter of law* in concluding that taxpayer had failed to establish such residency in a foreign country.

Section 911(a) (1) of the Internal Revenue Code of 1954 provides that an individual citizen of the United States may exclude from his gross income, and shall be exempt from taxation thereon, amounts received from sources outside the United States, if he establishes to the satisfaction of the Secretary of the Treasury, or his delegate (the Commissioner), that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which in-

cludes an entire taxable year (in this case the year 1954).[2]

In determining that taxpayer had failed to establish a bona fide foreign residence, the Tax Court based its conclusion on taxpayer's testimony and certain documentary evidence. Although taxpayer disagrees with some of the inferences drawn by the Tax Court from such evidence, the facts as stated are largely undisputed. The parties agree that the ultimate conclusion of residency is reviewable by this court as a question of law.

■ In such cases it has been held that the conclusion reached by the Tax Court is "a conclusion of law or at least a determination of a mixed question of law and fact." It is to be distinguished from "primary, evidentiary or circumstantial facts * * * [and] is subject to judicial review and, on such review, the court may substitute its judgment for that of the [Tax Court]." Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 64, 82 L.Ed. 32 (1937); Commissioner of Internal Revenue v. Fiske's Estate, 7 Cir., 128 F.2d 487, 489 (1942), cert. denied, 317 U.S. 635, 63 S.Ct. 63, 87 L.Ed. 512; Weible v. United States, 9 Cir., 244 F.2d 158, 160–162 (1957); Commissioner of Internal Revenue v. Swent, 4 Cir., 155 F.2d 513, 514–515 (1946), cert. denied, 329 U.S. 801, 67 S. Ct. 491, 91 L.Ed. 685.[3]

■ The statute itself does not define the term "bona fide resident." At best it is an elusive expression and one so peculiarly related to the facts in any given case "that each new case must be decided on the basis of its own unique attendant

---

2. Taxpayer makes no claim to benefits under the exclusions granted by Section 911(a) (2) of the 1954 Code.

3. A 1948 amendment to § 1141(a) of the 1939 Code gives to courts of appeals generally the power "to review the decisions of the Tax Court * * * in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury * * *." See Comment, Roehner on Federal Taxation, p. 68 (March 31, 1961). Cf. Dunn

v. Commissioner of Internal Revenue, 9 Cir., 220 F.2d 323, 324 (1955).

The construction of a statute is a question of law. In the instant appeal we are concerned with the meaning of "bona fide resident" in a statute. This requires the application of the correct legal criteria to the facts found by the trial court. This in turn calls for the exercise of a legal judgment and as such is subject to review as a question of law. Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 156 (1960).

circumstances." Nelson v. Commissioner, 30 T.C. 1151, 1153 (1958). It was aptly characterized by the Ninth Circuit when it was said that "residence * * * has an evasive way about it, with as many colors as Joseph's coat. * * .* " Weible v. United States, supra, 244 F.2d at 163.

The history of the various legislative enactments leading to the 1942 amendment presently before us, together with the appropriate Treasury Regulations drawn thereunder,[4] has been the subject of frequent judicial analysis and need not be further extended here. Weible v. United States, supra; Fuller v. Hofferbert, 6 Cir., 204 F.2d 592 (1953); Downs v. Commissioner of Internal Revenue, 9 Cir., 166 F.2d 504 (1948), cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759; Meals v. United States, D.C.N.D. Cal., 110 F.Supp. 658 (1953); White v. Hofferbert, D.C.D.Md., 88 F.Supp. 457 (1950); Johnson v. Commissioner, 7 T.C. 1040 (1946).

In applying the tests and principles used in determining the meaning of "nonresident alien" to the statute presently before us (footnote 4, supra), it seems clear that one of the proper distinctions to be recognized is that of "transients and sojourners on the one hand, and residents on the other." Ditman v. Hofferbert, D.C.D.Md., 136 F.Supp. 542, 544 (1955). To the same effect are Weible v. United States, supra; Fuller v. Hofferbert, supra; Swenson v. Thomas, 5 Cir., 164 F.2d 783, 784 (1947).

These cases further establish that residence is far less than domicile which requires an intent to make a fixed and permanent home. Fuller v. Hofferbert, supra, 204 F.2d at 597.

■ We have carefully studied the many cases cited by both parties, together with others found in our own research, and out of them all we see a pattern evolve under which numerous factors have been considered as bearing on the determination of bona fide foreign residence. Among the factors considered by the courts in determining whether a citizen of the United States has discharged his burden of satisfactorily establishing his claim of bona fide residence in a foreign country during an entire taxable year are the following:

(1) intention of the taxpayer;

(2) establishment of his home temporarily in the foreign country for an indefinite period;

(3) participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment;

(4) physical presence in the foreign country consistent with his employment;

(5) nature, extent and reasons for temporary absences from his temporary foreign home;

(6) assumption of economic burdens and payment of taxes to the foreign country;

(7) status of resident contrasted to that of transient or sojourner;

(8) treatment accorded his income tax status by his employer;

(9) marital status and residence of his family;

(10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time;

(11) good faith in making his trip abroad; whether for purpose of tax evasion.

While all such factors may not be present in every situation, those appropriate should be properly considered and weighed.

The case at bar is readily distinguishable from the earlier line of "war-work-

---

4. Section 1.911–1 of the Treasury Regulations on Income Tax (1954 Code) provides that, in general, the question of residence under Section 911(a) (1) is to be determined by applying the principles of Section 871, Code of 1954 (26 U.S.C.A., 1958 ed.) and the Regulations thereunder (Treasury Regulations, Section 1.-871–2) with respect to the residence or non-residence in the United States of an alien individual.

er" cases in which the courts rejected a claim of bona fide residence. Typical of these is Downs v. Commissioner of Internal Revenue, 9 Cir., 166 F.2d 504 (1948), cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759. As Judge Goodman points out in Meals v. United States, supra, 110 F.Supp. at 663: "It is sufficient to note that the 'war-worker' cases dealt with persons who had gone abroad for some specific purpose incident to the war effort. Many of them left families in the United States. The duration of their employment abroad was limited by contract or by the duration of the war. Limited visas also generally restricted their activity abroad both in nature and duration to the specific purpose they went to accomplish. Most of these workers worked and lived on military bases. Their movements were severely circumscribed by war-time regulations."

Judge Goodman goes on to observe that the "same thing may be said of the cases rejecting the claims of technicians to bona fide residence in various remote areas of the world." Typical of such cases is Jones v. Kyle, 10 Cir., 190 F.2d 353 (1951), cert. denied, 342 U.S. 886, 72 S.Ct. 175, 96 L.Ed. 664.

Our considered judgment is that the factual situations and rationale of the cases sustaining claims of bona fide residence in a foreign country [5] are more analogous to the instant case than those principally relied on by the Government.[6]

In view of the facts found by the Tax Court as earlier set out herein, having in mind that taxpayer was unmarried with no dependents living elsewhere; that he was a full time dedicated foreign correspondent who established his temporary home in Singapore and maintained it there from November, 1953 through December, 1955; that his absences from his temporary home were solely in pursuit of his broad professional assignments; that there is no claim of any scheme or arrangement by taxpayer for purposes of tax evasion; we feel compelled to conclude, in the light of the criteria found applicable, that taxpayer was not a transient or sojourner but, as a matter of law, was a bona fide resident of a foreign country during all of 1954. He was thereby entitled under section 911(a) (1), supra to exclude from gross income the compensation received by him during 1954 from Life and Time, Inc.

We conclude that the Tax Court erred as a matter of law in holding to the contrary.

The decision of the Tax Court is reversed and this cause is remanded with directions to expunge the deficiency assessment and enter judgment for taxpayer.

Reversed and remanded.

5. Weible v. United States, 9 Cir., 244 F.2d 158 (1957); Fuller v. Hofferbert, 6 Cir., 204 F.2d 592 (1953); Seeley v. Commissioner of Internal Revenue, 2 Cir., 186 F.2d 541 (1951); Myers v. Commissioner of Internal Revenue, 4 Cir., 180 F.2d 969 (1950); Swenson v. Thomas, 5 Cir., 164 F.2d 783 (1947); Supino v. United States, D.C.D.N.J., 192 F.Supp. 389 (1961); Ditman v. Hofferbert, D.C.D. Md., 136 F.Supp. 542 (1955); Meals v. United States, D.C.N.D.Cal., 110 F.Supp. 658 (1953); Glackin v. United States, D.C.S.D.Ill., 110 F.Supp. 372 (1952); Wood v. Glenn, D.C.W.D.Ky., 92 F.Supp. 1. (1950); White v. Hofferbert, D.C.D. Md., 88 F.Supp. 457 (1950); Yaross v. Kraemer, D.C.D.Conn., 83 F.Supp. 411 (1949); Hack v. Commissioner, 33 T.C. 1089 (1960); Stierhout v. Commissioner, 24 T.C. 483 (1955); Larson v. Commissioner, 23 T.C. 599 (1955); Hamer v. Commissioner, 22 T.C. 343 (1954); Rose v. Commissioner, 16 T.C. 232 (1951); Baehre v. Commissioner, 15 T.C. 236 (1950); Harvey v. Commissioner, 10 T.C. 183 (1948); Bouldin v. Commissioner, 8 T.C. 959 (1947).

6. Jones v. Kyle, 10 Cir., 190 F.2d 353 (1951), cert. denied, 342 U.S. 886, 72 S.Ct. 175, 96 L.Ed. 664; Downs v. Commissioner of Internal Revenue, 9 Cir., 166 F.2d 504 (1948), cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759; Souza v. Commissioner, 33 T.C. 817 (1960); de la Begassiere v. Commissioner, 31 T.C. 1031 (1959), affirmed per curiam, 5 Cir., 272 F.2d 709 (1959).