[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12582

_____

Agency Docket No. 004614-11

COMMISSIONER OF IRS,

Petitioner - Appellant,

versus

ESTATE OF TRAVIS L. SANDERS,
Deceased,
THOMAS S. HOGAN, JR., Personal Representative,
GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,

Respondents - Appellees.

_____

Petition for Review of a Decision
of the U.S. Tax Court

_____

(August 24, 2016)

Before JORDAN and ANDERSON, Circuit Judges, and DALTON,* District
Judge.

_____

* The Honorable Roy B. Dalton, Jr., Judge for the United States District Court for the Middle
District of Florida, sitting by designation.

ANDERSON, Circuit Judge:

Respondent-Appellant Commissioner of the Internal Revenue Service (the "Commissioner") appeals the United States Tax Court's judgment in favor of Petitioners-Appellees the estate of Travis L. Sanders (the "Estate") and the Government of the United States Virgin Islands. The Commissioner argues that the Tax Court erred by failing to make necessary factual findings. After review, and with the benefit of oral argument, we vacate the Tax Court's judgment and remand.

The United States of America and the United States Virgin Islands ("USVI") operate "separate but interrelated tax systems." Huff v. Comm'r, 743 F.3d 790, 793 (11th Cir. 2014). United States taxpayers who receive income related to the USVI are subject to different reporting requirements depending on their residency. Bona fide residents of the USVI are required to file tax returns only with the USVI Bureau of Internal Revenue ("VIBIR"). 26 U.S.C. § 932(c)(2). Taxpayers who have USVI-sourced income but are not bona fide residents of the USVI must file tax returns with both the VIBIR and the United States Internal Revenue Service ("IRS"). Id. § 932(a)(2). Additionally, the USVI is permitted to reduce the income tax for bona fide USVI residents on income "derived from sources within the Virgin Islands or income effectively connected with the conduct of a trade or business within the Virgin Islands." Id. § 934(b). In an effort to attract business to

2

the islands, the USVI established an Economic Development Program ("EDP") that offered a 90 percent reduction on certain USVI-sourced income to bona fide USVI residents.

Travis L. Sanders ("Sanders") was a successful Florida businessman until his death in 2012. He built a group of companies (the "Surge Suppression Companies") that manufactured and distributed surge suppression devices. Sanders began spending time in the USVI in 2002, and in that year he became a limited partner in Madison Associates ("Madison"), a USVI-based consulting firm. As described more fully below, Sanders provided services to the Surge Suppression Companies through Madison, and his companies paid Madison for those services. Madison then passed on a portion of those payments to Sanders. Because of that arrangement, Sanders filed tax returns only with the VIBIR, and pursuant to the EDP, he claimed a 90 percent tax reduction for income paid to him through Madison for tax years 2002, 2003, and 2004.

In 2010, the IRS issued notices of deficiency to Sanders, alleging that he had not been a bona fide USVI resident during those years and that Madison was an illegal tax shelter. Because Sanders was not a bona fide USVI resident, the Commissioner claims, Sanders was required to file tax returns with the IRS and was not entitled to the EDP tax reduction. Sanders challenged the notices in the Tax Court, arguing that the statute of limitations had run for the IRS to assess his

3

tax liability, and that he was, in fact, a bona fide resident of the USVI for tax years 2002, 2003, and 2004. After a bench trial, the Tax Court held that Sanders had been a bona fide USVI resident during those years. As a result, the Tax Court concluded, the statute of limitations had run, and the IRS's notices of deficiency were time-barred. The Commissioner now appeals.

This appeal requires that we interpret the statute of limitations for tax assessment and evaluate Sanders's residency. We begin by reviewing the factual background of this case. We proceed to discuss the statute of limitations issue, and we hold that the statute of limitations period was only triggered by Sanders's filings with the VIBIR if he was, in fact, a bona fide USVI resident. Then, we turn to the bona fide residency issue and hold that the facts the Tax Court relied upon were insufficient to demonstrate bona fide residency, at least in the absence of additional findings of subsidiary fact by the Tax Court. We therefore vacate and remand the Tax Court's judgment.

## I.  FACTS

Sanders visited the USVI during September of 2002. On September 25, 2002, he signed a limited partnership agreement and an employment agreement with Madison. Those contracts bound Sanders to work as a consultant for Madison and specified that distributions he would receive from the partnership would be based on revenue from clients he brought to Madison. Sanders also signed an

4

agreement on behalf of one of his Florida Surge Suppression Companies by which the company agreed to pay fees to Madison in exchange for Sanders's consulting services. Over the next three years, Sanders's Surge Suppression Companies paid fees to Madison, which passed the fees on to Sanders after deducting a portion for operating expenses, administrative fees, and other costs. Madison issued Sanders Schedule K-1 tax forms listing Sanders as a limited partner and classifying the payments from Madison to Sanders as USVI-source income. As a result, Sanders's income from Madison was potentially eligible for the 90 percent tax credit pursuant to the USVI EDP.

The parties dispute the extent to which Sanders's role in the Surge Suppression Companies changed when he became a consultant for Madison. The Commissioner claims that Sanders spent much of his time in the Surge Suppression Companies' offices in Florida and that his duties for the companies were essentially unchanged. The Estate argues that Sanders worked from Madison's offices in the USVI at least once every two months, that he played a reduced role in the Florida companies, and that he also sought opportunities to expand his companies' reach into the USVI and other parts of the Caribbean.

From September 2002 through the end of that year, Sanders spent 18 days in the USVI, according to the Estate. The IRS asserts that he spent only eight days on the islands in 2002, and the Tax Court did not resolve this factual dispute. When he

5

visited the USVI, Sanders stayed at a condominium at the Ritz Carlton St. Thomas (the "Ritz Carlton") in which Madison owned a one-twelfth ownership interest. Because Madison owned only a partial interest in the condominium, the unit was sometimes in use by its other owners. If Sanders visited the USVI when the unit was being used by another owner, the Ritz Carlton provided a similar condominium for his use. Sanders also stored a container of personal belongings at the Ritz Carlton, and the container was made available to him whenever he visited.

In 2003, Sanders formed a limited liability company with his friend and attorney Thomas Hogan ("Hogan"), also the Estate's personal representative in this case. Through that company, Sanders and Hogan purchased an approximately 70-foot motor yacht, the *Nazdar*. The *Nazdar* had five bedrooms, two kitchens, two bathrooms, an elevator, and a large living room. After Sanders and Hogan's company purchased it, the *Nazdar* was retrofitted in Destin, Florida. In April of 2003, the *Nazdar* was moved to the USVI and connected to utilities, including electricity, water, and cable television. From then on, Sanders stayed on the *Nazdar* when he was in the islands. He spent between 49 and 78 days in the USVI in 2003, and between 74 and 109 days there in 2004.[1] Sanders never established a

---

[1]    The lower estimates for each year are the Commissioner's; the higher ones are the Estate's (the Estate also argues that Sanders may have spent additional time in the USVI, though that time is undocumented). The Tax Court did not resolve the factual dispute as to the amount of time Sanders spent in the islands.

mailing address in the USVI; whenever he provided an address on the islands, he used Madison's business address.

Sanders's girlfriend at the time, Kathleen Hennessy ("Hennessy"), visited the USVI on occasion. When she did so during 2002, she stayed with Sanders at the Ritz Carlton. Sanders and Hennessy were married in the USVI in June of 2003. Throughout the entire time period relevant to this case, including after her marriage to Sanders, Hennessy continued live and work in Florida; she never sought to establish residence in the USVI. Sanders's two children—one an adult and one a minor—also lived on the mainland. Sanders's minor son lived in Destin, Florida with Sanders's ex-wife, though he spent time with Sanders when Sanders was in Florida, and Sanders maintained a room for his son at his home in Florida.

## II.  DISCUSSION

A.    Statute of Limitations

We turn first to the statute of limitations issue. Ordinarily, the IRS must assess a taxpayer's liability within three years of the filing of a return. 26 U.S.C. § 6501(a). The law defines "return" as "the return required to be filed by the taxpayer." Id. "[I]n order for returns to be considered 'filed' for purposes of setting the period of limitations in motion, the returns must be delivered, in the appropriate form, to the specific individual or individuals identified in the Code or Regulations." Allnutt v. Comm'r, 523 F.3d 406, 413 (4th Cir. 2008). In other

7

words, a return does not trigger the running of the statute of limitations unless it is filed in the place required by the statute or regulations. In this case, the Commissioner issued a notice of deficiency to Sanders in 2010, more than three years after Sanders filed his tax returns with the VIBIR.

There are several exceptions to the three-year statute of limitations, one of which is that "[i]n the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U.S.C. § 6501(c)(3). The Commissioner argues that, because Sanders was not a bona fide resident of the USVI, he was required by law to file returns with both the VIBIR and IRS. See id. § 932(a). Because he did not file returns with the IRS, the Commissioner claims, Sanders did not file the "return required to be filed by the taxpayer," and thus the statute of limitations never began to run.

The Government of the USVI (whose argument the Estate has adopted) proposes that we adopt a reading of the statute with an implied good faith exception to the return requirement. That is, Appellees argue that if a taxpayer files a return with the VIBIR, but not the IRS, in the good faith belief that he is a USVI resident, the limitations period should start even if the taxpayer is not, in fact, a bona fide USVI resident. Were we to agree with Appellees, and if the Estate could prove that Sanders had a good faith belief that he was a bona fide USVI resident,

8

that would be sufficient to start the statute of limitations regardless of his actual residency. We reject Appellees' argument and hold that a taxpayer's mere good faith belief regarding his USVI residency is insufficient to cause a return filed with the VIBIR to start the statute of limitations period.

Translated from Latin, "bona fide" means "good faith." Black's Law Dictionary provides two definitions for "bona fide": "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." *Bona Fide*, Black's Law Dictionary (10th ed. 2014). As applied to the determination of residency, the term "bona fide" requires both the resident's good faith intention to be a resident (as opposed to, for example, simply going through the motions of residency to dupe the taxing authorities) and objective indicia of genuine residency. We note briefly that the good faith involved in bona fide residency is slightly different from that urged by the Appellees. What matters for the bona fide residency test is not the taxpayer's good faith belief that he has satisfied some formulaic residency test, but his good faith intention to actually become a resident of a certain place for a legitimate reason. Indeed, when courts assess good faith as part of a bona fide residency determination, they look to a taxpayer's intentions and reasons for becoming a resident rather than his subjective beliefs about his residency status. See, e.g., Swenson v. Thomas, 164 F.2d 783, 784 (5th Cir. 1947) (finding "no want of good faith" because the taxpayer did not live abroad to evade taxes or "for any bad

9

purpose")[2]; <u>Vento v. Dir. of Virgin Islands Bureau of Internal Revenue</u>, 715 F.3d 455, 467 (3d Cir. 2013) ("[A] taxpayer's intent to engage in unlawful tax evasion will counsel against a finding of bona fide residency because it indicates that the taxpayer does not in good faith intend to become a resident, but rather intends to perpetrate a sham."). And that intention is typically borne out by objective factors.

The history of the use of the term "bona fide" in our case law illustrates that good faith intention alone is insufficient to demonstrate bona fides; objective facts indicating genuineness are also necessary. This is true in non-tax contexts, <u>see, e.g.</u>, <u>In re Hedrick</u>, 524 F.3d 1175, 1181 (11th Cir. 2008) (in the context of a bona fide purchaser), in the tax context, <u>see, e.g.</u>, <u>Nichols v. Commissioner of Internal Revenue</u>, 314 F.2d 337, 338 (5th Cir. 1963) (in the context of the deductibility of bona fide indebtedness), as well as in the residency context.

In the residency context in particular, we have looked to objective indicators of residency in addition to (or as evidence of) a taxpayer's subjective good faith. In <u>Swenson</u>, we considered the tax liability of an American citizen who had lived in Colombia for four years. At the time, the tax code exempted from United States income taxes any income earned abroad by a United States citizen who was "a bona fide non-resident of the United States for more than six months during the

---

[2]    In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

taxable year." Swenson, 164 F.2d at 783. The taxpayer in Swenson worked as an oil prospector in Colombia for an American company for four years. Id. at 784. We acknowledged that there was no evidence of any lack of good faith on the taxpayer's part: he "did not live in Colombia to evade taxes or for any bad purpose, but only to do the work he was sent to do." Id. We also looked to objective indicia of residency, observing that he lived in Colombia continuously for four years, conducted business there exclusively during that time, and paid taxes there. Id. at 784-85. Therefore, we held, the taxpayer was a bona fide non-resident of the United States. Swenson indicates that while a taxpayer's subjective intentions may be relevant to the residency determination, we must also look to objective indicia. See also Jones v. Comm'r, 927 F.2d 849, 854-55 (5th Cir. 1991) (observing that "[a] taxpayer's intent plays perhaps the most important part in determining the establishment and maintenance of a foreign residence," but then proceeding to consider a number of objective factors as evidence of the taxpayer's residence); Moore v. United States, 289 F.2d 926, 926-27 (5th Cir. 1961) (explaining that the "decision whether [an] American national is exempt from federal income tax by reason of being a bona fide resident of a foreign country depends upon the peculiar factors touching on his relationships with both the foreign and domestic scene," and affirming the district court on the basis of that court's decision, 180 F. Supp.

11

483 (S.D. Tex. 1960), that the taxpayer was not a bona fide resident of Mexico, a decision the district court reached in reliance on objective factors).

Even more significant than the foregoing case law, but entirely consistent therewith, the language and structure of the statute are clearly inconsistent with Appellees' invitation to us to imply a good faith exception to the requirement that the return be filed in the proper place. Section 932(a) expressly requires that "a citizen or resident of the United States (other than a bona fide resident of the Virgin Islands . . . ) . . . shall file his income tax return for the taxable year with both the United States and the Virgin Islands."[3] On the other hand, with respect to Virgin Islands residents, § 932(c) provides that "a bona fide resident of the Virgin Islands . . . shall file an income tax return for the taxable year with the Virgin

---

[3]    Section 932(a) reads, in relevant part:

> (a) Treatment of United States residents.—
>     (1) Application of subsection. This subsection shall apply to an individual for the taxable year if—
>         (A) such individual—
>             (i) is a citizen or resident of the United States (other than a bona fide resident of the Virgin Islands during the entire taxable year), and
>             (ii) has income derived from sources within the Virgin Islands, or effectively connected with the conduct of a trade or business within such possession, for the taxable year, or
>         (B) such individual files a joint return for the taxable year with an individual described in subparagraph (A).
>     (2) Filing requirement. Each individual to whom this subsection applies for the taxable year shall file his income tax return for the taxable year with both the United States and the Virgin Islands.

26 U.S.C. § 932.

12

Islands."[4] In other words, if the taxpayer is a "bona fide resident of the Virgin Islands," then the taxpayer may file only with the Virgin Islands; however, if the taxpayer is not "a bona fide resident of the Virgin Islands" (but has income derived from Virgin Islands sources), he shall file both with the United States and the Virgin Islands. There is no provision for a single filing only in the Virgin Islands merely because the taxpayer in good faith believes he might be a bona fide Virgin Islands resident.

That Congress did not contemplate such a good faith exception from the proper place of filing is borne out by the fact that Congress has in other situations explicitly granted good faith allowances of the type Appellees urge us to create here. In some cases, Congress has specified that a good faith belief, even if mistaken, is sufficient to trigger the statute of limitations. For example, a taxpaying entity that "determines in good faith that it is an exempt organization and files a

---

[4]    Section 932(c) reads, in relevant part:

> (c) Treatment of Virgin Islands residents.—
>     (1) Application of subsection. This subsection shall apply to an individual for the taxable year if—
>         (A) such individual is a bona fide resident of the Virgin Islands during the entire taxable year, or
>         (B) such individual files a joint return for the taxable year with an individual described in subparagraph (A).
>     (2) Filing requirement. Each individual to whom this subsection applies for the taxable year shall file an income tax return for the taxable year with the Virgin Islands.

26 U.S.C. § 932.

return as such," but is later held not to be a tax exempt organization, starts the statute of limitations by filing its mistaken return. 26 U.S.C. § 6501(g)(2). Congress has made similar allowances for taxpayers that determine in good faith that they are trusts, partnerships, or domestic international sales corporations. Id. § 6501(g)(1), (3). There is no such allowance for a taxpayer who believes in good faith that he has filed the return required by law (but has not), nor is there a narrower one for a taxpayer who believes he is a bona fide USVI resident (but is not). The fact that Congress provided similar exceptions elsewhere in the Code suggests to us that Congress did not intend to create the exception advocated by Appellees.

We have previously expressed some sympathy with Appellees' argument. In dicta in Huff v. Commissioner of IRS we outlined some fairness concerns implicated if no good faith allowance exists:

> The IRS claims that the Taxpayers' BIR returns did not start to run the § 6501 limitations period because they should have also filed a return with the IRS. But the Taxpayers only had to file a return with the IRS if the allegations in the IRS deficiency notices are true. Thus, the Taxpayers may only receive the "benefit" of § 6501 by disproving the IRS's allegations in the Tax Court. If the Taxpayers disprove the IRS's claims, however, they will not need the statute of limitations' protection because they will have won on the merits. So, the IRS's preferred application of § 6501 would effectively deny all Virgin Islands taxpayers the benefit of the limitations period—the IRS would be able to go beyond the three-year time limit by simply alleging that a Virgin Islands taxpayer made a mistake.

14

Huff, 743 F.3d at 799. But such entwining of the merits of a case with the statute

of limitations is not uncommon in tax cases. For example, a taxpayer who files a

false or fraudulent return is not entitled to the three-year statute of limitations. 26

U.S.C. § 6501(c)(1). If the IRS were to allege, more than three years after a return

were filed, that the return was fraudulent, the taxpayer could only receive the

"benefit" of § 6501 by showing that his return was not, in fact, fraudulent. See also

26 U.S.C. § 6501(c)(3) (same if taxpayer files no return assuming insufficient

income to require a return).[5]

Appellees also argue that we should adopt a good faith allowance because

the IRS has been inconsistent in its guidance regarding the filing requirements for

persons with USVI-sourced income. We disagree. We conclude that the IRS's

guidance on this issue prior to 2007 was consistent, both internally and with the

law. The IRS advised in 1999 that the three-year statute of limitations would apply

to prevent it from assessing additional tax liability for a bona fide USVI resident

---

[5]    Additionally, "[u]nder the established general rule a statute of limitation runs against the United States only when they assent and upon the conditions prescribed." Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249, 50 S. Ct. 297, 299, 74 L. Ed. 829 (1930). In any event, the fairness concern is mitigated by the following practicality. It seems to us that there is no reasonable possibility that a permanent resident of the USVI could be burdened by our rejection of a good faith allowance. Other taxpayers with USVI-sourced income, who reside only part time in the USVI, and especially those claiming EDP tax credits, will certainly act only with professional tax advice. And any competent tax advisor would advise such a taxpayer of the risks of claiming USVI residency, including that the IRS might make a contrary determination. Indeed, we note that Sanders did have such advice; the Estate conceded at oral argument that the relevant risks were explained to him.

15

more than three years after the resident had filed a return with the VIBIR. That guidance assumed that the taxpayer was a bona fide USVI resident and did not suggest that his good faith belief regarding his residency status was sufficient to begin the limitations period. In 2005, the IRS advised that a taxpayer who claimed to be a bona fide USVI resident, but was not, would not be entitled to the protection of the statute of limitations. The 2005 publication did not mention good faith, either. Those statements are consistent with one another and reflect the tax law.

Beginning in 2007, the IRS adopted positions more favorable to taxpayers because it had entered into an information-sharing agreement with the VIBIR. As a result, the IRS began to deem as United States tax returns the returns filed with the VIBIR of some persons claiming to be bona fide USVI residents. Since the initiation of this information-sharing agreement, the IRS has taken the position that certain tax returns filed with the VIBIR start the three-year statute of limitations, so long as the taxpayer claims to be a bona fide USVI resident (even if he is not actually one). Those developments, which took place well after the tax years at issue here, have no bearing on this case. The IRS never, prior to 2007, indicated that a taxpayer's claim that he was a bona fide USVI resident would have any effect on the operation of the statute of limitations. The IRS has never, at any time

16

before or after 2007, advised that a taxpayer's mere good faith in claiming bona

fide USVI residency is sufficient to trigger the statute of limitations.

The Tax Court did not discuss Appellees' claim that Sanders's good faith

belief that he was a USVI resident was sufficient to begin the limitations period.

The Tax Court did, however, observe that:

> In the instant case [the IRS] disputes that [Sanders] was a bona fide resident and contends that he should have filed returns with the IRS. In order to determine whether [Sanders's] tax returns for 2002–04 were properly filed as [he] contends, we need to address whether [Sanders] was a bona fide resident of the USVI for the purposes of section 932(c)(2). If we determine that he was, his Forms 1040 for tax years 2002–04 would be properly filed because they were filed with the VIBIR as the proper place of filing directed by the instructions.

Estate of Sanders v. Comm'r, 144 T.C. 63, 80-81 (2015) (internal citation omitted).

That is a correct statement of the law, though it does not expressly reject the

estate's good faith argument.[6]

We do expressly reject Appellees' good faith argument and hold that a

taxpayer who files a return only with the VIBIR does not trigger the statute of

limitations unless he actually is a bona fide resident of the USVI. Congress did not

intend to create an exception to the filing requirement for persons who file with the

---

[6]    Judge Jacobs in Cooper v. Commissioner of IRS, 109 T.C.M. (CCH) 1383 (T.C. 2015), did expressly reject the taxpayers' argument that their good faith filing with the VIBIR triggered the three-year statute of limitations. The court held that the statute of limitations will have expired only if the taxpayers prove they were actually bona fide residents of the Virgin Islands. Id. at *22-24.

VIBIR merely subjectively believing themselves to be USVI residents. The three-year statute of limitations does not run when a taxpayer who is not a bona fide USVI resident files a return with the VIBIR, but not the IRS, regardless of his subjective good faith beliefs as to his residency. We believe this interpretation is clearly indicated by the plain language of the statute. Also, in analogous statutory contexts, Congress has provided for such a good faith allowance. The fact that Congress did not do so with respect to USVI residents bolsters our belief that Congress did not intend a similar allowance here. Our interpretation of the statute is also suggested by the case law, which indicates that the term "bona fide" involves an inquiry that is at least partly objective and cannot be satisfied merely by a good faith belief. In this context of a substantial credit against taxes, and a vulnerability to abuse, we believe it is unlikely that Congress would have intended a merely subjective definition of residency.

In this appeal, Appellees raise only two challenges to the Commissioner's position that the statute of limitations never commenced. We have rejected the first such challenge—Appellees' good faith argument. We turn now to the Estate's second challenge—that Sanders was in fact a bona fide resident of the USVI in the years 2002, 2003 and 2004.

B.    Bona Fide Residency in the United States Virgin Islands

The Tax Court held that Sanders was a bona fide resident of the USVI for tax years 2002, 2003, and 2004. Sanders, 144 T.C. at 83. Bona fide residency for tax purposes is a question of law, or at least a mixed question of fact and law, that we review *de novo*. Carpenter v. United States, 495 F.2d 175, 178 (5th Cir. 1974); see also Vento, 715 at 468 (holding that a district court's determination of bona fide USVI residency "is a conclusion of law or at least a determination of a mixed question of law and fact") (quoting Jones, 927 F.2d at 852); accord Sochurek v. Comm'r, 200 F.2d 34, 37 (7th Cir. 1962). However, it is a fact-sensitive issue, and findings of subsidiary facts are especially significant.

More than fifty years ago, we observed that there are "difficulties in applying the term 'bona fide residence,' characterized by some as 'slippery' and as being as variable as Joseph's coat of many colors, and by others as 'elusive.'" Commissioner of Internal Revenue v. Matthew, 335 F.2d 231, 234 (5th Cir. 1964). Indeed, we have never set out a comprehensive test for bona fide residency.

That said, there is some guidance in existing case law as to its meaning. "Although the meaning may vary according to context, 'residence' generally requires both physical presence and an intention to remain." Martinez v. Bynum, 461 U.S. 321, 330, 103 S. Ct. 1838, 1843, 75 L. Ed. 2d 879 (1983). Residency demands that one be more than a transient or a sojourner, but requires "far less

19

than domicile which requires an intent to make a fixed and permanent home."

Sochurek v. Comm'r, 300 F.2d at 38. Additionally, while a person may have only

one domicile at a time, cases have recognized the possibility that one person may

have multiple residences simultaneously. Vento, 715 F.3d at 466; Downs v.

Comm'r, 166 F.2d 504, 508 (9th Cir. 1948).

The Seventh Circuit has enunciated a list of eleven factors to be considered

when determining whether a taxpayer is a bona fide resident of a foreign country.

Those eleven factors are:

(1) intention of the taxpayer;

(2) establishment of his home temporarily in the foreign country for an
indefinite period;

(3) participation in the activities of his chosen community on social and
cultural levels, identification with the daily lives of the people and, in
general, assimilation into the foreign environment;

(4) physical presence in the foreign country consistent with his employment;

(5) nature, extent and reasons for temporary absences from his temporary
foreign home;

(6) assumption of economic burdens and payment of taxes to the foreign
country;

(7) status of resident contrasted to that of transient or sojourner;

(8) treatment accorded his income tax status by his employer;

(9) marital status and residence of his family;

20

(10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time;

(11) good faith in making his trip abroad; whether for purpose of tax evasion.

Sochurek, 300 F.2d at 38. "While all such factors may not be present in every situation, those appropriate should be properly considered and weighed." Id.

The Fifth Circuit adopted the test from Sochurek in 1991, Jones, 927 F.2d at 853, and the First Circuit has cited it with some approval. See Bergersen v. Comm'r, 109 F.3d 56, 62 (1st Cir. 1997). More recently, and in the specific context of determining bona fide USVI residence, the Third Circuit closely analyzed the eleven Sochurek factors and grouped them into "four broad categories" to aid in analysis. Vento, 715 F.3d at 466-68. The four Vento categories are: (1) the taxpayer's intent to remain in the place of residency for "an indefinite or at least substantial period of time"; (2) the taxpayer's physical presence; (3) the taxpayer's social, family, and professional relationships; and (4) the taxpayer's own representations.

We conclude that the Third Circuit's grouping of the Sochurek factors into four broad categories provides appropriate guidance. It is sufficiently inclusive of most relevant factors, but easier to apply. We clarify, however, that those factors are not exclusive; rather, the appropriate analysis is one based on the totality of circumstances relevant to the residency issue. However, we emphasize—consistent

21

with the Supreme Court's directive that residency requires physical presence—that the taxpayer's time spent at an alleged place of residency is of particular importance, and that it is usually appropriate to compare time spent there with time spent in other places (including other places of residence).

The Tax Court acknowledged both the Seventh Circuit's factors and the Third Circuit's grouping. However, as discussed below, the facts relied upon by the Tax Court were insufficient as a matter of law to establish bona fide residency, at least in the absence of additional findings of subsidiary facts. For example, the Tax Court did not determine precisely *when* Sanders became a bona fide resident. But that determination is crucial, especially in light of the sparseness of the evidence with respect to the year 2002.

The Tax Court's application of the Sochurek/Vento test consisted of a single paragraph near the end of the opinion that relied on nine facts presented at trial:

> [1] He had a physical presence in the USVI and [2] was employed by a USVI business and [3] listed as a partner on their Schedules K–1 for tax years 2002–04. He [4] conducted banking in the USVI and [5] had checks with a USVI address. [6] Decedent was married in the USVI and [7] reported his address as the USVI on his marriage license. [8] Decedent identified himself as a resident of the USVI and [9] paid USVI taxes. Therefore, decedent was a bona fide resident of the USVI for tax years 2002–04 and he properly filed tax returns with the VIBIR for those years.

22

Sanders, 144 T.C. at 83 (internal citation omitted). We proceed to analyze these facts that formed the basis of the Tax Court's conclusion and discuss the weight properly accorded to each.

It is true that Sanders had a physical presence in the USVI. This is an especially important factor; indeed, it is explicitly mentioned in the Supreme Court's definition of "residency:" "physical presence and an intention to remain." Martinez, 461 U.S. at 330, 103 S. Ct. at 1843. What matters, though, is not the mere fact of physical presence but its nature and extent. Otherwise, a resident might be indistinguishable from a transient, sojourner, or visitor. The Tax Court did not properly determine the nature and extent of Sanders's physical presence in the USVI. The parties disputed the amount of time Sanders spent on the islands during each tax year, and the Tax Court did not resolve that dispute. Because the Tax Court never decided the nature and extent of Sanders's physical presence, it cannot have properly weighed this factor.

We stress again that precisely *when* Sanders became a USVI resident, and the nature and extent of his actual presence during the time of his alleged residency, are important. Even Sanders's own estimate that he spent 18 days in the USVI from September through December 2002 places him on the islands for only a small portion of the time, even considering only the 98 days from September 25, 2002 (the date on which Sanders signed his agreements with Madison) through the

23

end of the year. In addition, he had no personal home on the islands for any part of 2002 or for the early part of 2003.

On remand, the Tax Court should determine both how much time Sanders spent in the USVI and when, if ever, his contacts with the islands became sufficient to make him a bona fide USVI resident. With respect to these, and other subsidiary facts which might constitute contacts with the USVI, we cannot conduct the required appellate review without knowing the particular contacts found by the Tax Court to have existed, respectively, as of December 31, 2002; as of December 31, 2003; and during the entire year 2004.[7]

In addition to the time Sanders spent in the USVI, where he lived when he visited is also important in evaluating his physical presence. During 2002 and early 2003, he lived in a condominium at the Ritz Carlton owned by Madison. Living in a condominium partially owned by one's employer[8] (and which is not even available for every visit) does little to evince an intention to reside there indefinitely or at least for a substantial period of time. Thus, as of the end of tax

---

[7]    The determination varies by year because the relevant tax laws changed during the period covered by this case. The law in place for tax years 2002 and 2003 required that a taxpayer be a bona fide resident of the USVI "at the end of the taxable year" to file with the VIBIR and not the IRS. For 2004, the law required that the taxpayer be a bona fide USVI resident "for the entire taxable year." American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418, § 908(c)(2).

[8]    See discussion below with respect to whether Madison is even a genuine employer, i.e., whether Sanders's relationship with Madison has economic substance.

24

year 2002, Sanders's use of the Ritz condominium provided scant evidence that he was a bona fide resident. In 2003, Sanders purchased the *Nazdar* with Hogan, moved it to the USVI, and connected it to utilities there as of April 2003. That living situation is somewhat more indicative of residence than living in Madison's condominium, particularly given the boat's connection to utilities. But, depending on the circumstances, a boat still is a lesser indication of intent to remain for a substantial period than would be a fixed home.

The second and third facts relied upon by the Tax Court—that Sanders was employed by a USVI business, and that the business listed him as a partner on its Schedules K-1—should be accorded little weight in the absence of further findings of fact with respect to the nature of Sanders's business activities and the nature of his relationship with Madison. The location of one's employer does not necessarily have much bearing on where one resides. In Sochurek, for example, the taxpayer was employed by an American company—Life Magazine—but because he was stationed abroad as a foreign correspondent he was a bona fide resident of Singapore. 330 F.3d at 35-36, 39. More important is where the taxpayer actually worked. Nor does the listing of Sanders as partner on Madison's tax forms provide much evidence; that is a mere formality and provides little indication as to where he actually resided. Instead, Sochurek counsels us to look to the *nature* of his employment. The Commissioner argues that Sanders's relationship with Madison

25

had no economic substance and was a mere formality adopted as part of a tax avoidance scheme. The Commissioner argues that Sanders performed essentially the same duties for his Florida companies after he became a consultant for Madison as he did before, that the existence of Madison did little to facilitate any legitimate business purpose that could not be readily accomplished without Madison, and that his employment with Madison was a change in name only and a mere method of funneling his earnings through the USVI to claim a tax benefit. The Estate, of course, argues otherwise.

In the tax context, courts typically do disregard formalisms and look to the substance of a transaction to determine its effect. "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." Comm'r v. Court Holding Co., 324 U.S. 331, 334, 65 S. Ct. 707, 708, 89 L. Ed. 981 (1945). Similarly, transactions lacking economic substance or business purpose are not to be respected for tax purposes. Winn-Dixie Stores, Inc. v. Comm'r, 254 F.3d 1313, 1316-17 (11th Cir. 2001). That principle also applies when evaluating residency for tax purposes. Cf. Sochurek, 300 F.2d at 38 (holding that one of the factors to be considered in evaluating a taxpayer's residency is whether the taxpayer's trip abroad was "for the purpose of tax evasion"). The Third Circuit illustrated this principle in Vento, in which a taxpayer established

26

three businesses in the USVI. The Third Circuit counted two of those businesses as contacts for residency purposes, but disregarded the third because it was an illegal tax shelter. Vento, 715 F.3d at 471. We hold that application of this methodology is appropriate in this case.

A major problem in this appeal is that the Tax Court failed to make findings of fact with respect to the nature of Sanders's relationship with Madison, and failed to resolve the ultimate issue of whether Sanders's relationship with Madison had no economic substance. If the Madison relationship had no economic substance, then Sanders could not be deemed to have been employed by a genuine USVI business, and his being listed as a partner on Madison's Schedule K-1 would also have no substance.[9] In other words, if the Madison relationship had no economic substance, even Sanders's business activities conducted while present in the USVI might be primarily Florida contacts, not USVI contacts. That is, Sanders's physical

---

[9]    We note that, if the Madison relationship had no economic substance, the earnings that were funneled through Madison may not even have been USVI-sourced income. However, the Commissioner has not mounted a challenge on that theory (and the parties have not briefed that issue), and thus we express no opinion thereon. The Government probably did not mount such a challenge because, under Appleton v. Comm'r, 140 T.C. 273 (2013), a taxpayer who was stipulated to be a bona fide resident of the USVI properly files a single return with the USVI, and thus triggers the statute of limitations, even though the taxpayer fails to qualify for exemption from United States tax liability because of failure to properly identify the source of its income as required by § 932(c)(4). Thus, the Commissioner could succeed in this case only if it could prove that Sanders was not a bona fide resident of the USVI; otherwise, under Appleton, Sanders's return filed only in the USVI would trigger the statute of limitations and any claim the Commissioner had with respect to the source of income would be barred by the three-year lapse of time.

presence in the USVI would still count for as much time as he was actually there, but, depending on findings of fact with respect to what he was actually doing and the business need for that to be done in the USVI, his business activities might be more like simply working remotely for his Florida businesses.

On the other hand, some business activities of a person like Sanders, conducted through an entity like Madison, might still be considered contacts with the USVI even if the Madison arrangement had no economic substance. For example, if such a person were indeed present in the USVI for an extended time and dealing with USVI residents to promote and expand a Florida-based business into the USVI, those business contacts might count toward a residency claim even if the Madison-type entity were an illegal tax shelter.[10] However, the Tax Court in this case made no findings of fact in that regard.[11]

---

[10]    In other words, the facts counting toward residency would be the same as if such person were conducting the same business activities working directly for the Florida business. To return to the example of Sochurek, the taxpayer in that case worked directly for an American company. Because he was stationed abroad as a foreign correspondent for Southeast Asia, though, the *nature* of his employment supported his claim of residence in Singapore (regardless of the citizenship and physical location of the company that employed him). See Sochurek, 300 F.2d at 35-36. Moreover, even without relying upon any business or employment contacts at all, it is quite possible to establish residency through other contacts, such as extensive physical presence and strong social connections.

[11]    Finally, we reiterate that it is possible to establish residency without any business or employment contacts at all. For example, a retiree who moved to the USVI and lived there full time might be a bona fide USVI resident even though he had no business or employment contacts there (though, of course, he would also have no other, stronger business connections elsewhere). Additionally, a bona fide USVI resident whose residency was established by such other means does not lose his residency status simply because he is involved in an illegal tax

The fourth and fifth facts relied upon by the Tax Court—that Sanders conducted banking in the USVI and had checks that listed a USVI address—do, to some small extent, support his claim of bona fide USVI residency. However, neither is particularly convincing. It is possible, even convenient, to conduct banking almost anywhere in the world using modern technology. So while conducting banking in a certain place might be an indicator of residency, it is not a very strong one here. With regard to the addresses listed on Sanders's checks, we note that Sanders did not list a USVI address on any of his checks until 2004. Prior to that point, Sanders used an address in Destin, Florida. As a result, this fact cannot support his USVI residency until 2004, at the earliest. When Sanders finally did list a USVI address on some of his checks, the address listed was not Sanders's, but Madison's business address. This would be a more compelling fact if the checks listed a mailing address for Sanders in the USVI. Because Sanders did not list his own address in the USVI on his checks, this factor weighs very little in favor of bona fide USVI residence.

---

shelter. Thus, the Tax Court could avoid determining whether Madison was a legitimate business entity if the court could find that Sanders's other connections to the islands (those not dependent on Madison) were sufficiently strong to demonstrate bona fide residency. Consequently, a taxpayer may be a bona fide resident of the USVI based on the totality of the circumstances even if his economic activities there constitute an illegal tax shelter. However, the Tax Court may not count any of Sanders's contacts with the islands via Madison in favor of his residency until it has made a finding that Madison was not an illegal tax shelter.

Facts 6 and 7 have to do with Sanders's marriage. He married Kathleen Hennessy in the USVI in June of 2003 and listed a USVI address on his marriage license. Once again, the timing of these events is important. Neither fact supports a case for USVI residency until at least mid-2003. Even then, both of these facts are fairly unconvincing. The location of one's wedding is not necessarily any indication of where one resides. And again, the address Sanders listed on the marriage license was not his own, but Madison's. Additionally, it is undisputed that after the marriage in mid-2003, his new wife continued to reside in the couple's home in Destin, Florida, and never claimed residency in the USVI.

Next, the Tax Court mentioned that Sanders identified himself as a USVI resident. That is true with respect to his USVI tax returns, his marriage license, and some (but not all) of his USVI checks and bank accounts. However, Sanders also represented that he was a resident of Florida on other occasions. For example, on the returns for all three Surge Suppression Companies for tax year 2002, Sanders represented that he devoted 100% of his time to each business (leaving none left for Madison), and each business reported an address in Destin, Florida. As another example, in December of 2003, Sanders merged three of his Surge Suppression Companies into a single corporation. In the articles of merger filed with the Florida Department of State, Sanders was listed as the only officer and director of the companies. He was also listed as the companies' registered agent, with an address

30

in Destin, Florida. That Sanders represented himself as a resident of Florida on a number of occasions does not render his representations that he was a USVI resident meaningless, especially given the possibility that a person can have multiple residences. But it does considerably weaken the record evidence with respect to his representations regarding a USVI residency.

Finally, the Tax Court discussed the fact that Sanders paid USVI taxes. That may indeed be an indicator of residency. But, if the Commissioner is correct that Sanders merely pretended to be a USVI resident so he could pay taxes there, we would of course expect him to pay taxes in the USVI. Given the Commissioner's allegations, and substantial supporting evidence that Sanders masqueraded as a USVI resident so that he could pay taxes there, this fact, too, should be accorded little weight in the absence of findings favorable to Sanders on the economic substance issue.

We hold that, as a matter of law, these facts relied on by the Tax Court are insufficient to establish that Sanders ever became a bona fide resident of the USVI. Sanders's case is especially weak for tax year 2002; at least three of the nine facts the Tax Court listed occurred after 2002 and therefore had no bearing on his residency for that year. But even considering the evidence available as of 2003 and 2004, we hold that the facts the Tax Court relied on are insufficient to establish bona fide residency.

We therefore vacate the Tax Court's finding that Sanders was a bona fide USVI resident for tax years 2002, 2003, and 2004. On remand, the Tax Court should make factual findings regarding the amount of time Sanders spent in the USVI during each of those years, which is critical to determining the extent of his physical presence. Also important would be factual findings regarding the nature of the time Sanders spent there, including the nature of Sanders's relationship with Madison (e.g., Madison's economic substance and business purpose, or lack thereof); and, if Sanders ever became a bona fide USVI resident, a determination of when that happened.

For the foregoing reasons, we hold that the statute of limitations was triggered only if Sanders actually was a bona fide resident of the USVI. We also hold that the Tax Court's conclusion that Sanders was a bona resident of the USVI must be vacated. Accordingly, the judgment of the Tax Court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

32