FLOYD DEAN BROBST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brobst v. Commissioner
Docket No. 31057-86
United States Tax Court
T.C. Memo 1988-456; 1988 Tax Ct. Memo LEXIS 500; 56 T.C.M. (CCH) 282; T.C.M. (RIA) 88456; September 22, 1988. *500 Held: Petitioner is not entitled to exclude from Federal income tax under section 911 compensation earned in Angola because his abode remained in the United States. Held further, a refund of state income tax and a trust fund distribution are taxable income. Floyd Dean Brobst, pro see. David G. Hendricks, for the respondent. WHITAKER
MEMORANDUM FINDING OF FACTS AND OPINION WHITAKER, Judge: By statutory notice dated August 1, 1986, respondent determined a deficiency in income tax for the calendar year 1983 in the amount of $ 383. By amended answer filed January 12, 1988, respondent seeks an increased deficiency in the amount of $ 25,14.50 (including the sum of $ 383). The issues for decision are whether a state income tax refund and a stock bonus fund distribution, both received in the year 1983, are taxable to petitioner and whether petitioner is entitled to a foreign income exclusion under section 911 [1] *501 for compensation earned during 1983. [2] Respondent has the burden of proof on the section 911 issue. Rule 142(a). FINDINGS OF FACT Some of the facts have been stipulated and they are so found. Petitioner is a citizen of the United States and was a resident of Oklahoma at the time of filing of the petition in this case. For the year 1983 petitioner although married, filed a separate Federal income tax return with the Internal Revenue Service Center at Philadelphia. That return showed petitioner's "home address" to be a rural mail box in Pauls Valley, Oklahoma. During the entire year 1983, petitioner was employed by Gulf Oil Exploration and Production Company-International: Rotational Overseas Production/Exploration (R.O.P.E.) Group (Gulf). Petitioner was assigned to Gulf's camp at Molongo in Cabindo, Angola, with responsibilities related to pipelines owned or maintained by Gulf in Angola. Petitioner's schedule required alternate 28-day periods of work at Molongo and of recreation at a place other than Angola. Molongo is a self-contained camp located on Angola soil of approximately 5,000 acres which contains a terminal, oil storage facilities, warehouses, *502 offices, medical facilities, contractor facilities, a training center, a power plant, water wells, and residential facilities necessary to feed and house approximately 250 Gulf personnel. The camp has limited recreational entertainment facilities. While employed at Molongo, petitioner was issued a card captioned "Molongo Resident" which entitled petitioner to utilization of certain privileges within the camp, and he was also issued a card captioned "Gulf Molongo Country Club" which also entitled him to utilize certain facilities within the camp. Petitioner, as we assume was true of Gulf's other employees at the Molongo camp, was furnished meals and lodging at the camp and was restricted to the confines of the camp except when necessary to perform work outside the camp on the pipeline. To do so, petitioner obtained permission to make each trip and customarily took with him an Angolan-speaking person. He was required to check in and out with guards at the camp gate, and was limited to traveling directly to and from the area of the pipeline to be inspected or repaired. These trips were made frequently. In connection with the need to travel to the pipeline, petitioner was issued an *503 Angolan driver's license. Petitioner was not fluent in Portuguese, the language of Angola, but did learn sufficient words and phrases to be able to communicate to the extent necessary with Angolan natives. Petitioner customarily spent his 28-day periods of recreation with his wife in Oklahoma. Petitioner's only other travel in Angola was between the Molongo camp and an airport for transportation to the United States. Petitioner was otherwise prohibited from traveling in Angola, did not receive an Angola visa, and while at the Molongo camp his passport was held by Angola authorities, being returned to him when traveling to the United States for his rest periods. During the year 1983, and before and after that year, petitioner owned with his wife as tenants in common a house in Pauls Valley, Oklahoma. Petitioner's wife, not being permitted to accompany him to Molongo, remained in Oklahoma and taught at a school located near their home. Petitioner essentially commuted between Oklahoma and the Molongo camp at Gulf's expense. During all of 1983 petitioner held a United States drivers license, which we assume was issued by Oklahoma, and he was a registered voter in Pauls Valley, *504 Oklahoma. He could not and did not maintain a bank account in Angola. The following table shows the periods of petitioner's presence in the United States during 1983: Date Arrived in United States
Date Left United States
December 23, 1982
January 17, 1983
February 7, 1983
March 14, 1983
April 14, 1983
May 9, 1983
June 9, 1983
July 4, 1983
August 4, 1983
August 29, 1983
September 29, 1983
October 23, 1983
November 23, 1983
December 18, 1983
The parties have stipulated to a copy of Internal Revenue Service Publication No. 54 for the year 1980. Publication 54 includes a 1980 list of "Qualified Hardship Areas" and one of those ares is Angola. Publication 54 also defines a "Hardship Area Camp" and the publication explains that an individual qualifying under the bona fide residence test or the physical presence test in living in a hardship area may exclude up to $ 20,000 of income earned in that year. The parties also stipulated to a publication by Ernst & Whinney entitled "1982 Guide to U.S. Taxes for Citizens Abroad" which publication indicates that for the year 1983 a U.S. taxpayer would have an annual exclusion of $ 80,000 if the taxpayer qualifies as a bona fide resident of a foreign country. *505 Petitioner on his 1983 income tax return excluded the entire compensation received from Gulf in the amount of $ 61,696.56, attaching to that return Internal Revenue Service Form 2555. On this form petitioner claimed to have been a bona fide resident in Angola since 1979. He claimed an exclusion for the entire 1983 compensation received from Gulf as foreign-earned income. Petitioner did not remain outside the United States for 330 continuous days during any portion of the taxable year 1983. The parties have stipulated and we find that petitioner received a refund of state income tax in the amount of $ 3,423 which amount had been claimed as an itemized deduction on petitioner's Federal income tax return for the year 1982. The parties have further stipulated that petitioner received a Form 1099R issued by the Trust Fund Savings-Stock Bonus Plan of Gulf with respect to the year 1983 which shows a receipt by petitioner of ordinary income in the amount of $ 913.49. There is no direct proof by stipulation or otherwise of the actual receipt of this sum by petitioner but the statutory notice determines that sum to be taxable to petitioner and petitioner in effect conceded during the trial *506 that this distribution was received and was taxable income for the year 1983. OPINION Petitioner contends that during 1983 he was a resident of Angola. His arguments with respect to the section 911 issue are that the Internal Revenue Service accepted his 1983 return and the attached election to exclude his foreign-source income made on Form 2555, that the statutory notice did not raise this issue, and that respondent is too late in raising it in his amended answer since the limitation period ran on August 4, 1987. Petitioner also contends that his tax home was Angola and that Publication 54 and the Ernst & Whinney "1982 Guide to U.S. Taxes for Citizens Abroad" both support his position that all of his Gulf compensation is excludable from U.S. income tax as foreign source income. Petitioner's contentions are without merit. The statutory notice is dated August 1, 1986. Petitioner's 1983 tax return is dated August 4, 1984, and bears the received stamp with the date of August 23, 1984. Thus the statutory notice was issued less than 2 years from the date of filing of petitioner's return and is timely. Sec. 6501. It is also within our sound discretion to allow respondent to amend *507 his answer to claim an increased deficiency. Jasionowski v. Commissioner,66 T.C. 312, 317 (1976); sec. 6214(a). There are a number of problems with respect to Publication 54, not the least of which is that the photocopy provided by petitioner is barely legible in many places. That publication was issued for the year 1980 and does not take into account the amendments made by Congress in the Economic Recovery Tax Act of 1981 to section 911. [3] *508 However, even if this version of Publication 54 were applicable to 1983 and clearly held that petitioner's income was exempt from tax for the year 1983, which it does not, it is not an authoritative source of Federal tax law. Such informal publications are issued for assistance to taxpayers and Internal Revenue Service employees but they do not constitute enforceable and binding interpretations of Federal tax law. Zimmerman v. Commissioner,71 T.C. 367, 371 (1979), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). Of course the Ernst & Whinney Guide does not purport to be anything other than a guide to taxpayers. Also we note that it provides that a taxpayer "is not considered to have a tax home in a foreign country during any period when his abode is in the United States." Thus we turn to the statute and applicable case law for a resolution of this controversy. An individual may qualify under section 911 as applicable to the year 1983 *509 for the income exclusion either as a bona fide resident in a foreign country or by reason of being present in a foreign country for at least 330 full days out of any consecutive 12-month period. However, these two eligibility requirements are both modified by the definition of tax home. The critical issue in this case is whether or not petitioner for the year 1983 maintained an abode in the United States. If so, the individual cannot establish a tax home in a foreign country. This case is governed by several recent decisions of this Court, including Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988); and LeMay v. Commissioner,T.C. Memo. 1987-256, affd. 837 F.2d 681 (5th Cir. 1988). Although in both Bujol and LeMay, the taxpayers were employed on off-shore drilling rigs located in territorial waters of a foreign country, the operative facts in this case are not materially different. In all three cases, each taxpayer was on a 28-day work period schedule with the following 28 days spent off-duty at the residence of the taxpayer in this country. All three taxpayers were required to live on premises provided by the employer, had *510 little contact with foreign nationals but maintained a home with family in the United States where the individual spent his 28 days off-duty. In Bujol and LeMay we found that the taxpayer's abode, which was at a location where the taxpayer had strong economic, family, and personal ties, was within the United States. We find that to be the case with petitioner. We, therefore, hold that petitioner was not entitled to exclude any of his foreign-sourced income from United States taxation for the year 1983. Receipt in 1983 of the state tax refund is stipulated and petitioner has in effect conceded that the Gulf distribution was erroneously omitted from income. He seeks to argue that the state tax refund is within the $ 80,000 exclusion applicable to the year 1983, ignoring the fact that that exclusion (where available) is limited to foreign-earned income. It is established law that a taxpayer must include in gross income a refund of state taxes paid in a prior year, except to the extent that the earlier deduction did not result in a tax benefit. Sec. 111; Tracy v. Commissioner,T.C. Memo. 1985-40. We do not have before us petitioner's 1982 Federal income tax return and cannot make *511 an affirmative finding as to whether petitioner received any benefit from taking the state income tax as a itemized deduction on his income tax return for that year. However, petitioner bears the burden of proof and we therefore resolve against petitioner the unanswered question as to the benefit he received in 1982. By reason of the above, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. 2. A companion case (T.C. Memo. 1988-455↩) involving unrelated issues for 1977 and 1978 is also filed this date. 3. Pub. L. 97-34, 95 Stat. 172, 190-194, amended section 911 effective for taxable years beginning after Dec. 31, 1981; section 911 as in effect for the year 1983 provides insofar as pertinent here: (a) EXCLUSION FROM GROSS INCOME. - At the election of a qualified individual, * * * there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year- (1) the foreign earned income of such individual, and (2) the housing cost amount of such individual. * * * (d)(1) QUALIFIED INDIVIDUAL. - The term "qualified individual" means an individual whose tax home is in a foreign country * * * * * * (3) TAX HOME. - The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States.