T.C. Memo. 2020-158

**PA**

UNITED STATES TAX COURT

DOUGLAS H. CUTTING, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15370-17.                    Filed November 19, 2020.

<u>Robert L. Goldstein</u> and <u>Framta Saechao</u>, for petitioner.

<u>Daniel J. Bryant</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  Respondent determined the following income tax

deficiencies and penalties in a notice of deficiency issued to petitioner on May 18,

2017:[1]

_____

[1] Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6663(a) |
|------|-----------|----------------------|
| 2012 | $20,838 | $4,168 |
| 2013 | 22,105 | 4,421 |
| 2014 | 25,567 | 5,113 |

After respondent's concession that petitioner is not liable for any of the penalties, the remaining issues for decision are whether petitioner (1) was entitled to the section 911 foreign earned income exclusion for the years in issue and (2) received and failed to report California State income tax refunds as gross income for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated in our findings by this reference.

Petitioner resided in Nongprue Banglamung, Chonburi 20150, Thailand, when he timely filed his petition. He was a U.S. citizen at all relevant times.

Beginning in 2005 and continuing through the years in issue petitioner worked as a pilot for Omni Air International (OAI), a domestic company

---

[1](...continued)
Code of 1986, as amended, in effect at all relevant times. Rule references are to the Tax Court Rules of Practice and Procedure, and monetary amounts are rounded to the nearest dollar.

[*3] headquartered in Tulsa, Oklahoma. OAI had a contract with the U.S. Department of Defense. Petitioner flew mostly international routes but also some domestic routes. He primarily transported military personnel and cargo.

During the same year petitioner began working for OAI he married a woman who resided in Thailand. While working for OAI during the years in issue he spent most of his days off in Thailand with his wife and stepdaughter. Petitioner did not become a Thai citizen or obtain a permanent visa to reside in Thailand. He visited Thailand on a temporary transit and nonimmigrant visa that was granted automatically each time he entered Thailand and expired after 30 days. He was able to renew his temporary transit and nonimmigrant visas simply by leaving Thailand to work as a pilot on a regular basis, giving him a fresh 30-day period each time he returned. On at least two occasions during the years in issue petitioner requested that his temporary transit and nonimmigrant visas be extended. But on each occasion his request was denied by the Thai Government.

Because he held only temporary transit and nonimmigrant visas, petitioner could not lawfully own or lease any real property or work in Thailand. Therefore, while he signed his wife's lease as a witness, he was not listed on it as a tenant. Petitioner did not pay any taxes to Thailand.

**[*4]**  During the years in issue petitioner's wages were deposited into his bank account at the Golden One Credit Union, headquartered in California.  When he traveled from the United States to Thailand, he typically would bring several thousand dollars to exchange into Thai currency once he arrived.

Petitioner's employment with OAI was governed by a collective bargaining agreement (CBA) between OAI and the International Brotherhood of Teamsters. While OAI did not require that petitioner live in the United States, the CBA required him to have a "home base" (a "primary residence as listed on Company personnel and benefit records") and to designate a gateway travel airport in the contiguous United States.  Petitioner chose San Jose, California, to be his home base, and designated San Jose Airport (SJC) as his gateway travel airport. Petitioner chose San Jose because his parents and brother lived in the area. Petitioner listed his father's address in Campbell, California, as his mailing address.  He did not own or lease a residence in the United States during the years in issue.  Petitioner's credit card statements show that, during the years in issue, he shopped for groceries several times in Campbell, paid for haircuts several times in nearby Los Gatos, California, and went to the eye doctor and purchased corrective lenses in San Jose.

[*5]   Under the CBA, OAI was responsible for providing "deadhead" travel for petitioner from SJC "to a domestic * * * duty assignment or to a domestic airport of departure for an international assignment" and "from the domestic airport where the duty period ends to * * * [SJC]."[2] Petitioner was responsible for getting to SJC to start his duty assignments and for returning from SJC to wherever he wished to spend personal time when he was finished.

The CBA required petitioner to have a certain amount of training per year. All of the training was done in the United States. Petitioner also spent time each year on "reserve" for work. During "short call reserve" he had two hours to report for duty if called. During "long call reserve" petitioner had at least 12 hours to report for duty.

Petitioner's primary duty was as a pilot, and his primary income was earned during flights which he was piloting. He also was paid (at a lower rate) for time spent on short call reserve, training, deadhead travel, vacation days, and sick days. In addition he was paid an hourly per diem while between flights and still on duty. Petitioner was not paid while off duty or during long call reserve.

---

[2] Deadhead travel is "the movement of * * * [petitioner] from one reporting point to another at the direction of the Company while * * * [petitioner] is not involved in the operation of an aircraft."

[*6]   Flights were assigned in one- to two-month increments through a bidding system.  Once flights were assigned, petitioner knew his schedule for the entire one to two months, including flights, training, days off, vacation days, long call reserve, and short call reserve.

2012

In 2012 petitioner spent 153 days in Thailand.  He spent 44 days in training in the United States.  He worked as a pilot for 48 flights:  42 international and 6 domestic.  Petitioner had 60 deadhead flights:  26 international flights and 34 domestic flights.  He had 17 international per diem days.

2013

In 2013 petitioner spent 171 days in Thailand.  He spent 15 days in training in the United States.  He worked as a pilot for 60 flights:  59 international and 1 domestic.  Petitioner had 76 deadhead flights:  39 international and 37 domestic.  He had 15 international per diem days.

2014

In 2014 petitioner spent 114 days in Thailand.  He spent 14 days in training in the United States.  He worked as a pilot for 84 flights:  74 international and 10 domestic.  Petitioner had 106 deadhead flights:  71 international and 35 domestic.  He had 24 international per diem days and 6 domestic per diem days.

[*7]   Thus, during each year petitioner spent time in the United States training and had flight patterns that began or ended in the United States, including deadhead flights--where he was moving from one duty station to another--at domestic airports.  Additionally, according to petitioner's flight records, on several occasions OAI flew him to or from his home base of San Jose.  On some of these occasions OAI flew petitioner to San Jose at the end of an assignment and from San Jose to the start of his next assignment.  For instance, OAI flew petitioner into SJC on April 30, 2012, and flew petitioner out of SJC on May 21, 2012, and he was off duty during the entire time in between.

Petitioner timely filed Forms 1040, U.S. Individual Income Tax Return, for 2012, 2013, and 2014 listing his filing status as "single" for each year and listing his father's Campbell, California, address.  OAI withheld Federal and California State income, Social Security, and Medicare taxes from petitioner's wages for the years in issue.  He reported wages of $109,850, $113,872, and $136,194 for 2012, 2013, and 2014, respectively.  He deducted State tax of $7,053, $7,355, and $8,720 for 2012, 2013, and 2014, respectively.  Petitioner received but failed to report California State tax refunds of $7,585, $6,056, and $6,382 for 2012, 2013, and 2014, respectively.

[*8]   Petitioner attached Forms 2555, Foreign Earned Income, to his Forms 1040 for the years in issue.  He reported his entire salary from OAI as foreign earned income and claimed the maximum foreign earned income exclusion allowed for each year:  $95,100, $97,600, and $99,200 for 2012, 2013, and 2014, respectively. Petitioner checked "No" on Forms 2555, line 12a, which asks:  "Did any of your family live with you abroad during any part of the tax year?"  He checked "Yes" on line 13a, which asks:  "Have you submitted a statement to the authorities of the foreign country where you claim bona fide residence that you are not a resident of that country?"  He also checked "Yes" on line 13b, which asks:  "Are you required to pay income tax to the country where you claim bona fide residence?"  Finally, he checked "No" on line 15c, which asks:  "Did your visa limit the length of your stay or employment in a foreign country?"  On his Forms 2555 petitioner did not provide any information in Part III, Taxpayers Qualifying Under Physical Presence Test.

In the notice of deficiency respondent disallowed petitioner's foreign earned income exclusion in its entirety for each year in issue on account of his failure to establish either bona fide residence or physical presence in a foreign country for the relevant period.

[*9]                                    OPINION

The taxpayer generally has the burden of proving that the Commissioner's determinations in a notice of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden of proof may shift from the taxpayer to the Commissioner in certain circumstances under section 7491(a). Petitioner has not claimed or shown that he meets the requirements of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

I. Foreign Earned Income Exclusion

We first address respondent's determinations that petitioner did not qualify for the foreign earned income exclusion for 2012, 2013, or 2014 under section 911. United States citizens are subject to Federal income tax on their worldwide income. Cook v. Tait, 265 U.S. 47, 56 (1924); Huff v. Commissioner, 135 T.C. 222, 230 (2010). Section 61(a) provides the following broad definition of the term "gross income": "all income from whatever source derived" except as otherwise provided. Section 911(a) allows a "qualified individual" to exclude from gross income "foreign earned income". Foreign earned income is "the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual". Sec. 911(b)(1)(A). A qualified individual is defined, in relevant part, as "an

[*10] individual whose tax home is in a foreign country and who is" either "a bona fide resident of * * * [that country] for an uninterrupted period which includes * * * [the] entire taxable year," or physically "present in a foreign country or countries" for a certain period. Id. subsec. (d)(1).

A. Tax Home

We first turn to whether petitioner had a tax home in Thailand. An individual's tax home means the individual's tax home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). See sec. 911(d)(3). "Thus, under section 911, an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business or, if the individual has no regular or principal place of business because of the nature of the business, then at his regular place of abode in a real and substantial sense." Sec. 1.911-2(b), Income Tax Regs.

Petitioner argues that because he was a pilot flying international routes all over the world, he had no regular or principal place of business, and hence, his tax home should be determined by reference to his regular place of abode, which he argues is in Thailand. We have rejected this argument in the past, holding that the principal place of business for a pilot or similar professional is his duty station. See, e.g., Wojciechowski v. Commissioner, T.C. Memo. 1991-239 (holding that a

[*11] flight engineer's principal place of business was his base station, John F. Kennedy International Airport (JFK), and thus his tax home was in the New York City vicinity), aff'd per order, 1993 WL 31514 (D.C. Cir. 1993); Sislik v. Commissioner, T.C. Memo. 1989-495 (holding that a pilot's principal place of business was his base station, JFK airport, and thus his tax home was in the New York City vicinity), aff'd per order, 1992 WL 117693 (D.C. Cir. 1992); Swicegood v. Commissioner, T.C. Memo. 1989-467 (citing Folkman v. United States, 615 F.2d 493, 496 (9th Cir. 1980) (holding the tax home for airline pilots having dual employers and places of employment to be the city of the airline's duty base)) (holding that a pilot's principal place of business was his base station-- JFK--and thus his tax home was in the New York City vicinity).

Petitioner selected San Jose to be his home base and designated SJC as his gateway travel airport. Those selections came with substantive rights and obligations under the terms of the CBA. Specifically, OAI was obligated to provide petitioner transport to and from SJC at the beginning or end of a duty assignment.

Petitioner's employment arrangement with OAI was similar to the employment arrangements in Sislik and Swicegood. In each case a United States citizen pilot flew international routes, designated his home base at a domestic

[*12] airport (JFK), and chose to live abroad for personal reasons. Sislik v. Commissioner, T.C. Memo. 1989-495; Swicegood v. Commissioner, T.C. Memo. 1989-467. Despite the fact that each pilot did not actually always begin or end a flight pattern at JFK, we still held that the home base assignment was the principal place of business for each pilot. Sislik v. Commissioner, T.C. Memo. 1989-495; Swicegood v. Commissioner, T.C. Memo. 1989-467. Hence, each pilot's tax home was the New York City area, not the foreign country in which each chose to spend personal time. Sislik v. Commissioner, T.C. Memo. 1989-495; Swicegood v. Commissioner, T.C. Memo. 1989-467.

Likewise, we hold that petitioner's principal place of business, and thus his tax home, was in San Jose, his home base and the location of his gateway travel airport, SJC. See sec. 1.911-2(b), Income Tax Regs. Accordingly, petitioner is not a qualified individual and is not entitled to exclude any income under section 911. See sec. 911(a), (d).

B. Bona Fide Resident

Having determined that petitioner's tax home was not in a foreign country, we need not apply the bona fide residence or physical presence test to determine that petitioner was not a qualified individual. See sec. 911(d)(1). Nonetheless, we

[*13] will address petitioner's argument that he was a bona fide resident of Thailand during each year in issue.

Bona fide residence is "primarily a question of fact, and it is, therefore, difficult to reconcile the many cases in the area." Linde v. Commissioner, T.C. Memo. 2017-180, at *20 (quoting Dawson v. Commissioner, 59 T.C. 264, 268 (1972)); cf., e.g., Commissioner v. Estate of Sanders, 834 F.3d 1269, 1279 (11th Cir. 2016) ("Bona fide residency for tax purposes is a question of law, or at least a mixed question of fact and law[.]"), vacating and remanding 144 T.C. 63 (2015); Sochurek v. Commissioner, 300 F.2d 34, 37 (7th Cir. 1962) (holding that a conclusion regarding bona fide residency is a conclusion of law or at least a determination of a mixed question of fact and law), rev'g and remanding 36 T.C. 131 (1961); Weible v. United States, 244 F.2d 158, 161 (9th Cir. 1957) (holding that the question of whether a taxpayer was a bona fide resident was "a mixed question of law and fact").

To qualify for the foreign earned income exclusion as a bona fide resident of a foreign country, a taxpayer must offer "strong proof" of bona fide residency in the foreign country. Schoneberger v. Commissioner, 74 T.C. 1016, 1024 (1980). Courts consider a number of factors when determining whether a taxpayer was a

**[*14]** bona fide resident of a foreign country. <u>Sochurek v. Commissioner</u>, 300

F.2d at 38. These factors include:

>    (1)    the intention of the taxpayer;
>    (2)    establishment of his home temporarily in the foreign country for an indefinite period;
>    (3)    participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment;
>    (4)    physical presence in the foreign country consistent with his employment;
>    (5)    nature, extent and reasons for temporary absences from his temporary foreign home;
>    (6)    assumption of economic burdens and payment of taxes to the foreign country;
>    (7)    status as resident contrasted to that of transient or sojourner;
>    (8)    treatment accorded his income tax status by his employer;
>    (9)    marital status and residence of his family;
>    (10)   nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time;
>    (11)   good faith in making trip abroad; whether for purpose of tax evasion.

<u>Id.</u> While all of these factors may not be present in every case, the applicable

factors should be considered and weighed. <u>Id.</u> Below we consider the <u>Sochurek</u>

factors.

[*15]     1. The Intention of the Taxpayer

The Court of Appeals in Jones v. Commissioner, 927 F.2d 849, 854 (5th Cir. 1991), rev'g T.C. Memo. 1989-616, noted that "intent plays perhaps the most important part in determining the establishment and maintenance of a foreign residence." Testimony from the taxpayer that he intended to be a bona fide resident of a foreign country is not sufficient. See, e.g., Acone v. Commissioner, T.C. Memo. 2017-162, at *16. Rather, we look for objective indicia of an intention to establish residence in the foreign country. Id. (holding that this factor weighed against the taxpayer when the taxpayer's testimony that he intended to be a bona fide resident was not accompanied by any objective, concrete fact that persuasively demonstrated that intent). In Jones v. Commissioner, 927 F.2d at 854, the taxpayer's voluntarily declining to take a payment from the State of Alaska to its residents was a concrete, objective, consequential disclaimer of United States residency that made much more credible the taxpayer's claim of foreign residency.

By contrast, here, as in Acone v. Commissioner, at *16, no objective fact demonstrates that petitioner intended to be a bona fide resident of Thailand. He entered the country on temporary transit and nonimmigrant visas that expired after 30 days. On the few occasions that he sought extensions, they were denied. He

[*16] could not lease or own real property in Thailand.  And there is no indication that he sought to obtain a residency visa or citizenship in Thailand.  We hold that this factor weighs against petitioner.

> 2.  <u>The Establishment of a Temporary Foreign Home for an Indefinite Period</u>

It is difficult to conclude on this record that petitioner established a home in Thailand for an indefinite period.  His temporary transit and nonimmigrant visas required him to leave Thailand after 30 days and did not permit him to lease or own property.  Nor was he listed as a tenant on his wife's lease.  There is no indication that petitioner had or could have any legal right to reside at his wife's apartment in Thailand.  Therefore, this factor weighs against petitioner.

> 3.  <u>Assimilation Into the Foreign Environment</u>

Petitioner married in Thailand the same year he began working for OAI.  Petitioner did not present any other evidence on his cultural immersion in Thailand.  And the credit card statements show that he still got his haircuts, went to the eye doctor, and bought corrective lenses in the San Jose area.  We conclude that his marital status is offset by the lack of any evidence of assimilation into the Thai community.  Therefore, this factor is neutral.

**[\*17]**    4. <u>Physical Presence in the Foreign Country Consistent With His</u>
<u>Employment</u>

OAI did not request or require that petitioner reside or spend any of his time

in Thailand. However, he spent most of his nonworking days in Thailand during

each year in issue. Therefore, this factor weighs in favor of petitioner.

    5. <u>The Nature, Extent, and Reasons for Temporary Absences From</u>
<u>His Temporary Foreign Home</u>

When petitioner was not working--flying or in training--he spent most of his

time in Thailand, as noted above. Specifically, he spent 153 days in Thailand in

2012, 171 days in 2013, and 114 days in 2014. Therefore, this factor weighs in

favor of petitioner. <u>See</u> <u>Vento v. Dir. of V.I. Bureau of Internal Revenue</u>, 715

F.3d 455, 467 (3d Cir. 2013) ("[E]xtensive absences will negate a finding of bona

fide residency, unless those absences are justified by good-faith reasons, such as

the travel requirements of the taxpayer's profession.").

    6. <u>Assumption of Economic Burdens and Payment of Taxes to the</u>
<u>Foreign Country</u>

Petitioner did not pay any taxes to Thailand during any of the years in issue

but indicated on his Forms 2555 that he was required to pay income tax to

Thailand. Setting aside this inconsistency, the nonpayment of taxes to Thailand

weighs against petitioner. And while he broadly asserts that he contributed

[*18] towards living expenses at his wife's apartment, he did not establish what amounts he paid, nor was he liable for any amount with respect to the apartment as he was not listed as a tenant on his wife's lease. Therefore, this factor weighs against petitioner.

7. Status as Resident Contrasted to That of Transient or Sojourner

Petitioner's temporary transit and nonimmigrant visas allowed him to stay in Thailand for only 30 days at a time. Petitioner testified that these temporary transit and nonimmigrant visas "worked very well" because he would typically leave once per month for about 18 days at a time for work and, when he returned he would have a fresh 30 days to stay in Thailand "without applying for anything, or doing any extra work, or paying any money". Petitioner stated that applying for a residential visa "was a whole other ball of wax entirely", and he "didn't try to chase anything else down." His failure to pursue a more permanent option had real consequences as he could not lawfully work or hold any interests in real property in Thailand. Additionally, petitioner stated on his Forms 2555 that he submitted a statement to the Thailand Government that he was "not a resident of that country." His status thus was more akin to that of a transient or sojourner in Thailand, and therefore, this factor weighs heavily against him.

[*19]      8. <u>Treatment Accorded his Income Status by His Employer</u>

Petitioner's employer, OAI, was based in the United States. OAI withheld Federal and California State income tax from petitioner's wages for each year in issue. Therefore, this factor weighs against petitioner.

9. <u>Marital Status and Residence of Family</u>

Petitioner testified that he was married in Thailand and lived there with his wife and his stepdaughter, and we accepted his testimony. Yet we cannot overlook his failure to explain why he filed his Form 1040 as "single" for each year in issue or why he stated on his Form 2555 that he did not live with any family members abroad. This unexplained conflict between his marriage status and his election renders this factor neutral at best.

10. <u>Nature and Duration of His Employment</u>

Because his employment is not what brought petitioner to Thailand, this factor is not applicable in this case. <u>See</u> <u>Sochurek v. Commissioner</u>, 300 F.2d at 38-39 (distinguishing situations where a taxpayer's employment abroad is limited to a specific timeframe from situations where a taxpayer's employment abroad was not but also explaining that not all factors may be present in every case).

[*20]      11. Good Faith

We noted above several conflicts in petitioner's argument that give us reason to question whether he acted in good faith. First, petitioner stated on his Forms 2555 that he was subject to taxes to Thailand but stipulated that he did not pay any taxes to Thailand during any of the years in issue. Form 2555 explicitly states that a taxpayer does "not qualify as a bona fide resident" of a foreign country if the taxpayer checks "Yes" that he submitted a statement to foreign authorities that he is not a resident of that country (line 13a) and "No" that he is not subject to tax in the foreign country (line 13b). See sec. 911(d)(5). Second, petitioner testified at trial that he was married and lived with his wife and stepdaughter in Thailand, but he elected single status on his Forms 1040 and indicated on Forms 2555 that he did not live abroad with any family members. Third, petitioner stated on his Forms 1040 that his Thailand visas did not limit his stays in Thailand but testified at trial that he relied solely on temporary transit and nonimmigrant visas that required him to leave after 30 days. Fourth, he testified at trial that he never had a visa extension denied by Thailand; but when confronted with documentary evidence showing that he was denied an extension no less than twice during the years in issue, he did not recall the denials and considered them minimal. These inconsistencies tilt this factor against petitioner as well.

[*21] In sum, six factors weigh against petitioner, two factors weigh in favor of petitioner, and two factors are neutral. We view as most significant that:

(1) petitioner relied on temporary transit and nonimmigrant visas and did not pursue residency, (2) he filed a statement with the Thailand Government that he was not a resident of Thailand, (3) he did not pay any taxes to Thailand, (4) he was not a tenant under the terms of his wife's lease, and (5) his testimony contradicted his Forms 1040 in several important respects. Accordingly, we hold that petitioner was not a bona fide resident of Thailand during the years in issue.

Therefore, petitioner is not a qualified individual as defined by section 911(d)(1) because his tax home was in San Jose and because he did not show that he satisfied the bona fide residence test.[3] See sec. 911(a), (d). He, accordingly, is not entitled to exclude any of his income as an OAI pilot under the foreign earned income exclusion for the years in issue. See id.

---

[3] Even if a taxpayer is not a bona fide resident of a foreign country, he can still be a qualified individual if he was physically present in a foreign country or countries for a certain number of days. Sec. 911(d)(1)(B). Petitioner did not assert in his returns, petition, or on brief that he satisfied this physical presence test. Additionally, he did not provide any information with respect to the physical presence test on his Forms 2555. Accordingly, we deem this argument conceded. See Rules 34(b)(4), 149(b).

[*22] II. <u>California State Income Tax Refunds</u>

We now turn to whether petitioner failed to report California State income tax refunds he received during the years in issue. Generally, under section 111 and the regulations thereunder, if State income tax was deducted on a prior year's Federal income tax return and resulted in a reduction of Federal income tax and a tax benefit to the taxpayer, the taxpayer's subsequent recovery of the State income tax must be included in gross income for the year in which the recovery is received. See <u>Kay v. Commissioner</u>, T.C. Memo. 2011-159.

Petitioner received but failed to report California State income tax refunds of $7,585, $6,056, and $6,382 for 2012, 2013, and 2014, respectively. He claimed deductions for California State income tax of $7,053 on his 2012 tax return and $7,355 on his 2013 return. He did not introduce evidence with respect to his 2011 tax return other than his own testimony that he took a deduction for California State income tax in 2011 just as he did for 2012, 2013, and 2014.

Petitioner did not dispute that he received the California State income tax refunds. Instead, he argued that the refunds would result in a tax benefit to him only if, computationally, his itemized deductions for each year he deducted the

[*23] State income tax exceeded the standard deduction for that year.[4] The notice of deficiency shows that the Commissioner allowed itemized deductions of more than the standard deduction amounts for 2012 and 2013. Because we have determined here that petitioner was not eligible to exclude the wages he received from OAI for the years in issue, he will receive a tax benefit from the State tax he deducted for 2012 and 2013 because his itemized deductions (which included his California State income tax) exceeded the standard deduction for each of those years. See sec. 1.111-1(b), Income Tax Regs. Accordingly, the refunds of California State income tax he received in 2013 and 2014 are includable in his gross income for those years.

With respect to the refund he received in 2012, we hold that petitioner failed to introduce evidence of his 2011 itemized deductions and, therefore, he failed to carry his burden on this issue. See Brobst v. Commissioner, T.C. Memo. 1988-456, 1988 Tax Ct. Memo LEXIS 500, at *11-*12; see also Charleston Nat'l Bank v. Commissioner, 20 T.C. 253, 263 (1953) (holding that a taxpayer had "wholly failed to carry its burden of showing that prior deductions * * * were without tax benefit"), aff'd, 213 F.2d 45 (4th Cir. 1954). Accordingly, the refund of

---

[4] The standard deduction for an individual filing as "single", such as petitioner, was $5,800 for 2011, $5,950 for 2012, and $6,100 for 2013.

**[*24]** California State income tax he received in 2012 is includable in his gross income for that year.

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.